**In re Gary L. SZCZEPANSKI, Pamela J. Szczepanski, Debtors.**

**ITT FINANCIAL SERVICES, Plaintiff,**

**v.**

**Gary L. SZCZEPANSKI, Defendant.**

**Bankruptcy No. 90–3431.**
**Related No. 90–33030.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

Sept. 4, 1991.

Samuel B. Morrison, Toledo, Ohio, for Debtor.

---

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after Trial on the Complaint to Determine Dischargeability of Debt filed by ITT Financial Services. At Trial, the parties had the opportunity to present the evidence and arguments they wished the Court to consider in reaching its decision. The Court has reviewed the testimony, the documents which were admitted at Trial, and the arguments of counsel, as well as the entire record in this case. Based upon that review, and for the following reasons, the Court finds that the debt owed to ITT Financial Services for One Thousand Six Hundred Thirty–Five Dollars and Twenty–Eight Cents ($1,635.28) should be dischargeable.

## FACTS

On, or about, June 27, 1990, the Debtor/Defendant, Gary L. Szczepanski [hereinafter "Szczepanski"], received in the mail a pre-approved credit application from the Plaintiff, ITT Financial Services [hereinafter "ITT"], indicating that a signature loan had been pre-approved for him. On July 10, 1990, Szczepanski executed a promissory note in the amount of One Thousand Six Hundred Thirty-five Dollars and Twenty-eight Cents ($1,635.28) to ITT for which he received a loan. Under the terms of the application, the Debtor did not need to offer any collateral as security for the loan; he only needed to sign for it. Prior to this transaction, the Debtor's wife, who was in telephone sales, was diagnosed as having throat cancer and consequently was unable to contribute her share of the family income.

The loan was to be repaid in Thirty-seven (37) monthly installments of Sixty–Six Dollars ($66.00) each, with the first installment being due on August 10, 1990. The record reflects that no payments were made on this loan and that Szczepanski made no efforts to contact ITT to discuss this matter.

Four days after the first payment was due, the Debtor contacted an attorney apparently because some of his creditors were attempting to collect on debts he and his wife owed. On August 30, 1990, the Debtor consulted Samuel B. Morrison, Debtor's current counsel, and made the decision to file for bankruptcy. On September 5, 1990, the Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code.

ITT filed its Complaint to Determine Dischargeability of Debt, seeking to have the debt declared nondischargeable under Section 11 U.S.C. § 523(a)(2)(A), which excepts from discharge those debts obtained through fraud. ITT alleged that the Debtor falsely represented his intentions to repay the loan.

## LAW

■ ITT desires to have its loan declared nondischargeable under Section 523(a)(2)(A), which states in pertinent part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b) of this title does

not discharge an individual debtor from any debt—

(2) for money, property, services or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A).

■ To succeed in its claim, ITT must prove the following elements: (1) that the debtor made false representations; (2) that at the time made, the debtor knew them to be false or acted with gross recklessness as to their truth; (3) that the representations were made with the intention and purpose of deceiving ITT; (4) that ITT reasonably relied on the representations; and (5) that ITT sustained the alleged injury as a proximate result of the representation having been made. *In re Phillips*, 804 F.2d 930, 932 (6th Cir.1986); *In re Martin*, 761 F.2d 1163, 1165 (6th Cir.1985); *In re Kleinoeder*, 56 B.R. 77 (N.D. Ohio 1985). ITT must sustain its burden by a preponderance of the evidence. *Grogan v. Gardner*, — U.S. —, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). If there is room for an inference of honest intent, the question of nondischargeability must be resolved in favor of the debtor. *In re Constantino*, 72 B.R. 231 (Bankr.N.D. Ohio 1987).

The first issue presented to the Court is whether the Debtor made a false representation. On the loan application is the following language: "[Debtor] promises to pay to [ITT] the total of payments beginning on the due date of the first payment and on the corresponding date in any succeeding month ...." ¶ 1 of the Promissory Note dated July 10, 1990. Szczepanski promised he would make timely payments to ITT. The record reflects that Szczepanski failed to make any payments. This was the false representation.

■ Although mere breach of contract without more does not evince an existence of actual fraud or false representation for purposes of nondischargeability, obtaining a loan with no intentions of repaying it or with the knowledge of an inability to comply with the terms of the loan agreement may deem the debt nondischargeable. *In re Faulk*, 69 B.R. 743 (N.D.Ind.1986). Thus, the Court's next inquiry is whether the Debtor knew or reasonably should have known that he would not make payments when he borrowed the money.

At the time the loan agreement was entered into, the Debtor's wife was unemployed due to her cancer and, therefore, the monthly income in the Debtor's household had decreased. His wife's illness resulted in an accumulation of medical bills which were rapidly becoming due. Szczepanski had been contacted by some of his creditors as to payment on debts owed. The Debtor used the loan proceeds to make monthly payments on his outstanding financial obligations, rather than paying some of them off completely. As a result, the Debtor had monthly payments to make on the loan from ITT, plus all his other obligations. Thus, the Debtor could not have reasonably expected to repay the ITT indebtedness at the contractually scheduled rate. The Court notes the fact that the Debtor executed the promissory note one month before consulting with an attorney and one and one-half months before signing his voluntary petition. It was apparent that on August 30, 1990, the date the petition and schedules were signed, that the Debtor considered the filing of Bankruptcy. Additionally, the Debtor's schedules clearly reflect his insolvency. His prepetition liabilities exceed his assets by the amount of Sixty-three Thousand Five Hundred Eighty-four Dollars and Twenty-nine Cents ($63,584.29). Accordingly, the Court finds that the Debtor knew his promise to pay was a false representation.

■ As to whether the Debtor intended to deceive ITT at the time the promissory note was signed, the Court may consider an amalgamation of facts. "Because direct proof of intent (*i.e.*, the debtor's state of mind) is nearly impossible to obtain, the creditor may present evidence of the surrounding circumstances from which intent may be inferred." *Matter of Van Horne*, 823 F.2d 1285, 1286 (8th Cir.1987). Additionally, the debtor's state of mind at the

time the loan was made can be inferred from his subsequent conduct. *In re Fitzgerald*, 109 B.R. 893 (N.D.Ind.1989); *In re Krause*, 114 B.R. 582 (N.D.Ind.1988).

At the Trial, the Defendant testified that he never made a payment on the loan and that he never contacted ITT in an effort to rectify his inability to pay at that time. He also testified that one and one-half months after the loan document was executed, he decided to file his bankruptcy petition. The record reflects that Szczepanski's liabilities were almost double his assets at the time the petition was filed, which was one and one-half months after taking out the loan. Based upon a review of the Debtor's schedules and petition, the Court finds it difficult to believe that the Debtor incurred that much in liabilities in a one and one-half month time period.

Szczepanski argued that his inability to pay was due to the fact that he believed that his wife would be able to return to work, but she didn't because she suffered a relapse in her condition. The Court has difficulty in accepting this excuse. The Debtor's income was diminished when he signed the loan documents due to his wife's illness and, thus, the Debtor should not have over-extended himself based upon a belief that his wife would be well enough to return to work in the future. The Court is sympathetic to Szczepanski's plight, but the Court believes that Szczepanski should have been more realistic in his expectations. The Court finds that based upon the surrounding circumstances and the Debtor's conduct, that there is a preponderance of evidence, and the Court can infer based upon that evidence, that the Debtor had the intent to deceive the Plaintiff when he made the representation that the debt would be repaid.

■ ITT reasonably relied on the representation. ITT had extended loans to the Debtor in the past and the record reflects no difficulties in these transactions. Apparently, the Debtor had a good credit history with ITT and, based upon the past dealings with the Debtor, ITT reasonably relied on the Debtor's promise that he would repay the loan.

■ The Debtor raised the defense of assumption of risk, contending that ITT actively solicited the Debtor to enter into the obligation and that the risk of nonpayment was factored into the finance and interest charges. This Court does not believe that this defense is applicable to the case at bar. There were no allegations that ITT was improvident in its actions and without such allegations, this Court will not comment upon the business practices of ITT. A debtor's *bad faith* business transactions do not constitute a business risk in Bankruptcy situations. The Bankruptcy Code and the fresh start policy of good faith debtors in Bankruptcy do not permit this Court to find the ITT loan dischargeable due to the doctrine of assumption of risk under these circumstances.

During the Trial, the Debtor testified that he opted for the insurance offered by ITT at an additional cost. The Court ordered that ITT cancel the credit life and credit disability insurance to mitigate its damages.

In judging the credibility of the Debtor, the Court has taken into consideration the Debtor's intelligence, age, memory, demeanor while testifying, the reasonableness of the testimony in light of all the evidence of the case, and any interest, bias, or prejudice the Debtor may have. In reaching the conclusions found herein, the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this opinion.

Accordingly, it is

ORDERED that the Debt owed to ITT Financial Services be, and is hereby, held nondischargeable under Section 523(a)(2)(A).

It is FURTHER ORDERED that ITT Financial Services cancel the insurance coverage for the Debtor and recover any money resulting from the cancellation to mitigate its damages.

It is FURTHER ORDERED that the Judgment in this case be, and is hereby, the amount of One Thousand Six Hundred Thirty-five Dollars and Twenty-eight Cents

less any amount recovered from the cancellation of the insurance coverage.