**In re Timothy J. HALLAGAN, Debtor.**

**Janice Sullivan, Plaintiff,**

**v.**

**Timothy J. Hallagan, Defendant.**

**Bankruptcy No. 98–14325.
Adversary No. 98–1328.**

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

Nov. 19, 1999.

---

Thomas C. Pavlik, Cleveland, OH, for Defendant–Debtor.

Michael A. Partlow, Morgenstern, Mac-Adams & DeVito, Cleveland, OH, for Plaintiff.

Virgil E. Brown, Jr., Cleveland, OH, trustee.

*MEMORANDUM OF OPINION AND ORDER*

RANDOLPH BAXTER, Bankruptcy Judge.

Plaintiff, Janice Sullivan (Sullivan), the former spouse of Timothy J. Hallagan (the Debtor) seeks a dischargeability ruling on

certain obligations decreed in a state court judgment entry. This action is prosecuted under provisions of 11 U.S.C. §§ 523(a)(2), (a)(6) and (a)(15) of the Bankruptcy Code. Upon conclusion of a trial proceeding, an examination of the evidence adduced and of the record, generally, the following findings of fact and conclusions of law are rendered.

Core jurisdiction of this proceeding is acquired under provisions of 28 U.S.C. §§ 157(b)(2)(I) and 1334, in addition to General Order No. 84 of this District.

The parties herein were divorced in 1993. A judgment entered on October 22, 1993 by the Medina County, Ohio Court of Common Pleas, Domestic Relations Division (Exh. P–1) awarded judgment against the Debtor (1) in the sum of $179,000.00 plus seven .(7%) interest; (2) that the Debtor pay Sullivan $1,500.00 per month for the first thirty-six (36) months and thereafter at a rate of $3,000.00 per month until the principal balance plus accrued interest was fully paid; (3) in order to secure said obligation, the Debtor was ordered to escrow Sullivan's stock in a family business known as Hallagan Medical, Inc., f.k.a., Hallagan and Sullivan Medical, Inc. with his legal counsel; and (4) the Debtor was ordered to maintain a life insurance policy in the face value amount of $175,000.00, with Sullivan as the named beneficiary. Undisputedly, the foregoing awards are contained in Paras. Nos. 1–5 of said judgment entry and constituted a negotiated agreement between the parties. The Debtor was also ordered to pay all outstanding medical bills incurred by Sullivan prior to November 17, 1992 and to reimburse her for any valid medical bills which she had paid prior to that date. The Debtor failed to comply with the terms of that

Judgment. Subsequently, he filed his voluntary petition for relief under Chapter 7, and this proceeding ensued.

The issue to be resolved requires a determination of whether the Debtor committed inappropriate conduct regarding his obligations under the state court judgment which would render those obligations nondischargeable in bankruptcy.

▮▮▮ The type of conduct which would render a debt nondischargeable under § 523(a)(2)(A) is equivalent to common law fraud: [1]

1. The debtor must have made a false representation;

2. At the time of making the misrepresentation, the debtor must have had knowledge of its falsity and intent to deceive. This knowledge and deliberate purpose of deceit is referred to as "scienter";

3. The creditor must have justifiably relied on the false representation in entering into the transaction—it must have been induced by the misrepresentation to give the debtor the money, property, services, or credit.... See, *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995);

4. Misrepresentation must have resulted in some injury.[2]

In a proceeding under § 523(a)(2)(A), a plaintiff must demonstrate that the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or was made with gross recklessness as to its truth. The creditor must also prove the debtor's intent to deceive. *In re Brady*, 101 F.3d 1165, 1172 (6th Cir.1996), citing, *In re McLaren*, 990 F.2d 850, 852 (6th Cir.1993), quoting, *In re Phillips*, 804 F.2d 930, 932 (6th Cir.1986).

1. A discharge under section 727 ... does not discharge an individual debtor from any debt—
    (2) for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by—
        (A) false pretenses, a false representation or actual fraud, other than a state-

ment respecting the debtor's or an insider's financial condition.

2. Blum, B.A. *Bankruptcy and Debtor/Creditor*, Aspen Law & Business: § 22.54, p. 477 (1999).

*Testimony*

The testimony revealed that the Debtor is currently employed by a medical device manufacturer since April of 1999. His monthly base salary is $2,000.00 plus a ten percent (10%) commission on each product sold. He is also eligible for periodic bonuses. (Debtor, Cross–Exam). Schedule "J" of the Debtor's voluntary Chapter 7 petition reports monthly expenses in the amount of $3,730.00 against his gross monthly income of $2,000.00. He testified, however, that his wife's income makes up the difference.

The Debtor acknowledged that Plaintiff Sullivan, his former spouse, was to receive one-half of certain stock from their former company. He further acknowledged that he did not give her the one-half interest that she was entitled to receive due to pressure he was under to pay a debt to the Internal Revenue Service. *Id.*

In October of 1996, he sold the stock of a certain entity known as Lexigon for $15 Thousand. He was fully aware that he was obligated to purchase Sullivan's interest in their former jointly owned company for $179,000.00. *Id.*

The parties' divorce judgment (Exh. 1) included a provision addressing the stock buy-out and escrow requirement. Notwithstanding, the Debtor discontinued the operation of Hallagan and Sullivan Medical, Inc. (HSMI) following the divorce and started another entity under the name of Hallagan Medical, Inc. (HMI) with his brother. HSMI, a manufacturer's representative entity, was co-owned by the Debtor, his brother, and Sullivan. His testimony revealed that, effectively, HMI and HSMI were one and the same, as the accounts were the same. (Debtor, Cross–Exam). Once HMI was formed, he became an employee of that company but left in 1994 due to a loss of certain clients. *Id.* (See also Exh. 11). Subsequently, he formed a sole proprietorship known as Emtech in 1996. In that capacity, he continued serving as a manufacturer's representative selling various medical devices.

It operated out of his apartment in 1997 and out of his wife's house in 1998.

A judgment entered by the state court obligated the Debtor to pay Sullivan an amount of $1,500.00 per month for the first thirty-six (36) months and, thereafter, an amount of $3,000.00 per month, plus seven percent (7%) interest on the unpaid balance. It is undisputed that the Debtor did not make these ordered payments. Sullivan did, however, receive $5,000.00 as part of a $179 Thousand buy-out of her interest in HSMI. (See, Exh. 1–3) (Sullivan, Direct).

Another state court judgment (Exh. 2–1) entered in favor of Sullivan awarded her one-half of certain Leisegang stock, which was converted by the Debtor to Galileo stock. Sullivan never received this stock award from the Debtor (Sullivan, Direct). Rather, the Debtor sold part of the Galileo stock in 1996 in order to avoid an IRS levy on his property. (Debtor, Direct). The Debtor contends that the balance of the Galileo stock was remitted to Sullivan's attorney in escrow. *Id.* Sullivan, however, disputes that the Debtor escrowed any of the Leisegang stock with her attorney (Sullivan, Direct). Her cross-examination testimony revealed she did receive sixty-four (64) shares of Galileo stock valued at $23.75 each.

In view of the above factual findings and an examination of the record, generally, the evidence shows unrefutedly that: (1) the Debtor participated in the negotiation of the state court agreed order; (2) neither of the three orders issued by the state court involving property disposition between the Debtor and Sullivan were appealed by the Debtor; (3) the Debtor was duly represented by legal counsel throughout the state court proceedings; (4) he failed to comply, knowingly, with each Court imposed obligation in the agreed order; and (5) the record is silent to show where he sought any modification of the state court orders. Consequently, such conduct perpetuated by the Debtor

was fraudulent upon Plaintiff Sullivan and thereby violates § 523(a)(2) of the Code.

The Debtor's conduct of disobeying the provisions of the agreed order executed between he and Sullivan also evinced false representations. In view of the above factual findings, he knowingly chose to pay other obligations while under court order to make payments to Sullivan which he deliberately failed to make. The circumstances between the parties surrounding the execution of the agreed order makes it apparent that the Debtor harbored an intent not to pay Sullivan which existed at the time he executed the agreed order. His termination of HSMI and the creation of HMI in a rather close time sequence, without Sullivan's participation or approval, revealed an intentional act on the Debtor's part to dispose of any ownership interest of Sullivan to her detriment. It is undisputed that the Debtor and his brother, Dan, removed Sullivan as a corporate officer in 1990, terminated HSMI, and immediately formed HMI. In doing so, HSMI's assets were taken over by HMI. HMI was solely owned by the Debtor's brother (Dan), with Sullivan receiving no HMI shares to address her former forty percent (40%) interest in the terminated HSMI. The Debtor's forty percent (40%) interest in HSMI was given to his brother without consideration. HSMI, prior to closure, generated approximately $100,000.00 annually in revenues. (Biesiada, E.J., Direct). It is further found that Sullivan's reliance upon the provision of the Agreed Order was justifiable. Accordingly, the subject debt is rendered nondischargeable pursuant to § 523(a)(2) of the Bankruptcy Code.

Having determined that the subject debt is nondischargeable under § 523(a)(2), it is unnecessary for the Court to consider the other dischargeability allegations lodged in Sullivan's Complaint. To the extent, however, it may be deemed be proper to address Sullivan's §§ 523(a)(6) and (a)(15) allegations, they also provided a meritorious basis upon which the Debtor's obligations to Sullivan are nondischargeable.

■ Under § 523(a)(6), a debt is nondischargeable to the extent it resulted from conduct of the debtor which willfully and maliciously caused injury to an individual or property of the affected individual. As determined above, the Debtor's intentional violation of the underlying court orders resulted, in part, in Sullivan's loss of her ownership interest in HSMI. The Debtor's course of action which caused that loss was both willful and intentional. Thusly, the debt in question is rendered nondischargeable on those above findings as well.

■ Under § 523(a)(15), Sullivan challenges the discharge of the Debtor's obligations to her. Under that statutory provision, the following is noted:

§ 523. Exceptions to discharge.

(a) A discharge under section 727, 1141, 1227(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor;

The Debtor, age 47, has remarried and has two minor children by his present wife who is expecting their third child. No children were born during the Debtor's marriage to Sullivan. He earned undergraduate and graduate degrees in the field of biology in 1975 and in 1980, respectively. He taught at the high school level one year before he began selling medical devices as a manufacturer's representative. Upon moving to Cleveland in 1981, he started his own business which lasted until 1999. Since April of 1999, he has been employed by Belmont Instruments Corporation as a manufacturer's representative selling medical devices. (Debtor, Direct).

The Debtor's monthly gross income is currently $2,000.00, with net income of $1,600.00 which reflects his base salary. Additionally, he is entitled to a ten percent (10%) commission on each medical device sold. His 1999 gross income is estimated to be $30,000.00. His employment with Belmont provides him with insurance coverage and other fringe benefits plus advancement opportunities. *Id.* His reported 1998 gross income was reported in the amount of $20,575.00 (Exh. D), and his 1997 earned income was $35,579.00 (Exh. C–1). By his own choice, the Debtor has restricted his employment field to that of a medical manufacturer's representative (Debtor, Direct). His wife is the title owner of their home purchased in 1996.

Although he testified that he has an eighteen percent (18%) disability attributed to a herniated disc (Debtor, Direct), the Debtor receives no compensation regarding this reported disability, including any workers compensation award. Further, no documentation was provided to support any established disability for the Debtor. At a minimum, the Schedules do not report any disability income. (Debtor, Cross–Exam). He applied unsuccessfully in 1997 to receive workers compensation while self-employed with his own company, Emtech. *Id.*

The Debtor's wife has been employed for four years on a full-time basis with a major U.S. accounting firm. Her reported 1997 wages totaled $30,528.58 (Exh. P–6), and there has been no substantial change in her income between 1997 and 1999. (Debtor, Direct). Her net monthly income was estimated in the amount of $1,500.00.

The Plaintiff Sullivan, on the other hand, is not employed, is on full disability, and has received disability income due to work-related injuries since 1984 while employed with General Motors Corporation (GMC). Her reported disabilities are inclusive of carpal tunnel, tendonitis, thoracic outlet syndrome (T.O.S.); right dorsal scoliosis, and spinal bone spurs. Undisputedly, those illnesses have rendered her unemployable. Her weekly disability entitlement from GMC totals $284.79 or $1,139.16 per month. This monthly income is to be compared with her reported monthly expenses of $932.00, plus unspecified medical bills. Rent ($500.00); average monthly utilities ($115.00); car payment ($267.00); telephone ($50.00), etc. (Sullivan, Direct). Her testimony was that of an individual living a rather spartan-like life style. She borrows monies from her relatives in order to eat and lives in various parts of the country to avoid becoming a burden on her family. *Id.* Sullivan is a single 51–year old female with no minor children. She has one adult son from a prior marriage. She attended college two years studying in the field of nursing. This testimony of Sullivan was unrefuted.

Upon comparison, it is apparent that both the Debtor and his former spouse, Sullivan, are experiencing difficult financial times. The Debtor, however, has the greater earning potential due to the following factors: (1) He is not certifiably disabled, while Sullivan is; (2) He is not only employable but is indeed employed with advancement opportunities; (3) He is college-educated with an advanced degree; (4) His job advancement opportunities are self-imposed; (5) He has the benefit of his current spouse's income who is employed full-time, *inter alia.* Applying these factors to the statutory elements of

§ 523(a)(15)(B), allowing the Debtor a discharge on the subject debt would result in a benefit to the Debtor that is outweighed by the detrimental consequences to his former spouse, Sullivan. Accordingly, on this additional basis, the debt to Sullivan is rendered nondischargeable.

### Conclusion

Judgment is hereby granted in favor of the Plaintiff Sullivan, and the subject debt is rendered nondischargeable. Each party is to bear its respective costs and fees.

IT IS SO ORDERED.