In re William R. RAPP and Gayle F. Rapp, Debtors.

Shirley M. Schafer, Plaintiff,

v.

William R. Rapp, et al., Defendants.

Bankruptcy No. 06–52794.
Adversary No. 06–02543.

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division at Columbus.

Sept. 18, 2007.

James E. Nobile, Nobile & Thompson Co., L.P.A., Hilliard, OH, for Plaintiff.

Pamela N. Maggied, Columbus, OH, for Defendants.

Myron N. Terlecky, Columbus, OH, Chapter 7 Trustee.

## *MEMORANDUM OPINION*

JOHN E. HOFFMAN, JR., Bankruptcy Judge.

Plaintiff Shirley M. Schafer ("Schafer") initiated this adversary proceeding to determine the dischargeability of a state court judgment entered in her favor against Defendant William R. Rapp ("Rapp" or "Debtor"), a contractor and the debtor in this Chapter 7 case.[1] Schaf-

---

1. Schafer's complaint ("Dischargeability Complaint") (Doc. 1) also named Western Re-

er sued Rapp in August 2004 in the Franklin County Court of Common Pleas ("State Court").[2] The lawsuit arose from a dispute between the parties concerning certain renovation and remodeling work performed by Rapp. The State Court's Decision Following Bench Trial ("Decision"), entered March 30, 2006, found for Schafer and entered judgment against Rapp in the amount of $26,500. Schafer now seeks a determination that this judgment debt is excepted from discharge under 11 U.S.C. § 523(a)(2)(A) and (a)(6).

Before the Court are the parties' cross-motions for summary judgment, each of which relies exclusively on the findings of fact and conclusions of law set forth in the Decision. As explained below, because the Decision does not establish that the judgment is a debt for money obtained by false pretenses, false representations, or actual fraud, or a debt for willful and malicious injury, the judgment is not excepted from the Debtor's discharge. Thus, Rapp is entitled to summary judgment.

## I. Jurisdiction

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference entered in this district. This is a core proceeding. 28 U.S.C. § 157(b)(2)(I).

## II. Factual and Procedural History

The material facts of this case are not in dispute and are taken from the Decision.

In December 2003, Schafer hired Rapp to perform renovation and remodeling work at a vacant property owned by her mother. Rapp prepared a contract ("Con-

tractor Agreement") setting forth the terms of his agreement with Schafer, including a contract price of $16,200, work and payment schedules, and general details about the scope of the work to be performed. The State Court found that the Contractor Agreement contained the following material terms:

> 1. All work shall be completed in a workman-like [sic] manner and in compliance with all building codes and other applicable laws.
>
> &ast; &ast; &ast;
>
> 3. To the extent required by law all work shall be performed by individuals duly licensed and authorized by law to perform said work.
>
> &ast; &ast; &ast;
>
> 7. Contractor shall at its [sic] own expense obtain all permits necessary for the work to be performed.
>
> &ast; &ast; &ast;
>
> 12. Contractor warrants all work for a period of 36 months following completion.

Decision ¶ 6 (internal quotation marks omitted).

Upon signing the Contractor Agreement, Schafer paid the first installment payment in the amount of $5,400. Schafer understood that Rapp would not devote his full time to the project, but would instead attend to the job during the cold-weather months in the winter of 2004 when other work was slow. In February, Schafer made a second installment payment of $5,400 and advanced Rapp an additional $1,500 shortly thereafter. Though the contract called for a completion date of

serve Mutual Casualty Company ("Western Reserve") as a defendant. At the time of the events leading up to Plaintiff's suit and judgment, Rapp maintained an insurance policy with Western Reserve. On January 23, 2007, the Court entered an Order Approving Stipu-

lation of Partial Settlement (Doc. 20), dismissing with prejudice all claims asserted by Plaintiff against Western Reserve.

2. *Schafer v. Rapp*, Case No. 04–CVH08–8576, Franklin County Court of Common Pleas.

April 15, 2004, Schafer did not inspect the work until late May, when Rapp was nearing completion of the project. Schafer was dissatisfied with the quality of the renovations and prepared a punch list identifying numerous examples of work performed in a careless or non-workmanlike manner.[3] Schafer specified a week to complete the items, and Rapp and his workers continued work on the project.

When Schafer returned to inspect the progress a week later, she prepared a second punch list identifying deficiencies more serious than those she had previously pointed out. For example, gas and hot water had not yet been connected, and a toilet was leaking water. Frustrated, Schafer asked Rapp to leave the project. Shortly thereafter, Schafer had the property inspected by an expert in various construction trades. The expert concluded that certain electrical and plumbing work had not been done according to applicable codes, and certain structural work had been performed in a manner that was "plainly improper." Decision ¶¶ 20–21.

■ Schafer filed the civil action against Rapp in State Court, asserting two claims for relief—a common law fraud claim and a claim based on Rapp's alleged violations of the Ohio Consumer Sales Practices Act ("OCSPA").[4] Following a bench trial, the State Court ruled as follows:

3. The Decision listed the following deficiencies:

> 14) Many items identified by Mrs. Schafer reflect work not done in a workmanlike manner, even for a rehabilitation that was intended to be of moderate price and "functional" rather than "upscale." Flooring in the kitchen was new linoleum, but the subflooring over which it was laid was so irregular that the final product was wavy. Installation of fixtures, like HVAC outlet covers, electric outlet faceplates, and the vanity in the bathroom, was done in a careless manner, so the fixtures were not flush with the walls. Likewise, an enormous amount of calking was done along the top of baseboards and around doorways, which reflected that large gaps remained when walls, floors, and trim had not been shimmed or made to fit well. This work also reflected lack of workmanship in that the caulk itself was not trimmed down to the minimum, but simply was left in an unnecessarily wide seam just as it came out of the caulking gun.
>
> 15) The contract explicitly called for "repair [of] walls to smooth, and prime" costing $700, followed by "paint [of] all rooms and halls" costing $1,200. Unfortunately, throughout much of the house the old plaster walls were not sanded flat (or spackled or otherwise addressed for smoothness) before paint was applied. Indeed, in many places new paint was applied over old wallpaper. While in an old house an allowance of only $700 for wall repairs may not go very far toward a final "smooth" condition, in this instance the Court finds that defendant just badly underestimated the amount of work reasonably required to deliver final walls in the "smooth" condition he promised. Plaintiff was entitled to "smooth" walls per the contract.
>
> 16) Some painting work also was not done in a workmanlike manner. Remarkably, interior glass transoms over doorways were simply painted over as adjoining walls were being painted. Likewise, windows were painted shut from the inside, and metal door knobs and other hardware were painted over using the same white paint used on walls, woodwork and trim. Many hardwood floors reflected spills of paint, as if the floors had not been tarped or otherwise protected during painting.

Decision ¶¶ 14–16 (alterations in original) (footnote omitted).

4. In paragraph 6 of the Dischargeability Complaint, Schafer alleges that "[t]he underlying case concerned Plaintiff's claims against Rapp for (i) breach of contract, (ii) common law fraud, (iii) false representation, and for (iv) violations of several provisions of the [OCSPA]...." Dischargeability Compl. ¶ 6. This allegation is incorrect. The complaint filed by Schafer in State Court ("State Court Complaint") contains only two claims for relief: (1) a common law fraud claim; and (2) a claim under the OSCPA. See State Court Compl. ¶¶ 12–25. Although the State Court

25) [T]he preponderance of the evidence proves that defendant Rapp materially breached his contract, and plaintiff did not get what she paid to receive....

. . . .

29) Mr. Rapp committed several deceptive consumer practices, and unconscionable acts or practices as defined in [Ohio Revised Code] 1345.02 and 1345.03. These included misrepresenting the fact that legal permits would be obtained, and taking advantage of the consumer's ignorance that Mr. Rapp was not properly licensed or entitled to perform such work in the City of Columbus. In addition, this contract provided that the work was to be completed in a "workman-like manner and in compliance with all building codes and other applicable laws." Mr. Rapp took too many short cuts....

30) The Court concludes that it has been proven defendant was deceptive from the outset about being licensed and obtaining permits, and never intended to comply with those important promises made to induce Mrs. Schafer to hire him.

. . . .

33) While finding that there was both a breach of contract and serious knowing violations of the Consumer Sales Practices Act, *the Court does not find common law fraud....*

Decision ¶¶ 25–33 (emphasis added).[5]

The State Court found that the true value of the work performed by Rapp was $6,300. Because Schafer had already paid $12,300 of the contract price, the State Court awarded actual damages of $6,000, which it trebled due to Rapp's violations of the OCSPA. Decision ¶¶ 25–26, 31. The State Court also awarded Schafer $8,000 in legal fees and $500 in litigation-related expenses. Decision ¶ 32. Judgment was entered against Rapp in the amount of $26,500.

On June 9, 2006, Rapp filed a petition for relief under Chapter 7 of the Bankruptcy Code. Schafer commenced this adversary proceeding August 24, 2006, seek-

Complaint was not submitted by the parties along with their cross-motions, the Court may take judicial notice of its contents. *See* Fed. R.Evid. 201(b)(2); *Green v. Warden, U.S. Penitentiary,* 699 F.2d 364, 369 (7th Cir.) ("[F]ederal courts may also take notice of proceedings in other courts, both within and outside of the federal judicial system...."); *Rodic v. Thistledown Racing Club, Inc.,* 615 F.2d 736, 738 (6th Cir.1980) (taking judicial notice of record in related state proceeding); *Southmark Prime Plus, L.P. v. Falzone,* 776 F.Supp. 888, 892 (D.Del.1991) ("Pursuant to [Federal] Rule [of Evidence] 201(b)(2), the Court can take judicial notice of the contents of court records from another jurisdiction.").

**5.** As previously noted, Schafer did not include a breach-of-contract claim in the State Court Complaint. Yet, in its decision the State Court made a finding that Rapp breached the Contractor Agreement and awarded damages based on its determination that Schafer failed to receive the contractual value she had bar-

gained for. Decision ¶¶ 25–26. Ohio Civil Rule 15(B) permits a trial court to amend the pleadings to conform to the evidence presented at trial, even after judgment. Ohio Civil Rule 15(B) provides, in relevant part, as follows:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. Failure to amend as provided herein does not affect the result of the trial of these issues.

*See State ex rel. Evans v. Bainbridge Twp. Trs.,* 5 Ohio St.3d 41, 448 N.E.2d 1159, 1160 (syllabus ¶ 3) (Ohio 1983) ("Whether an unpleaded issue is tried by implied consent is to be determined by the trial court, whose finding will not be disturbed, absent showing of an abuse of discretion.").

ing to except the $26,500 judgment from discharge under 11 U.S.C. § 523(a)(2)(A) and (a)(6). Schafer and Rapp filed cross-motions for summary judgment, each asserting that the State Court's findings of fact and conclusions of law are entitled to preclusive effect.

### III. Legal Analysis

#### A. Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c) (made applicable in this adversary proceeding by Fed. R. Bankr.P. 7056). On motion for summary judgment, the inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anthony v. BTR Auto. Sealing Sys., Inc.*, 339 F.3d 506, 511 (6th Cir.2003); *McKenzie v. Bell-South Telecomms., Inc.*, 219 F.3d 508, 512 (6th Cir.2000). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir.2003); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989). Once the moving party satisfies its burden, the non-moving party must then "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e)); *Lanier v. Bryant*, 332 F.3d 999, 1003 (6th Cir.2003); *McKenzie*, 219 F.3d at 512. The non-moving party may not meet this burden by resting on mere allegations in the plead-

ings. *See* Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Mounts v. Grand Trunk W.R.R.*, 198 F.3d 578, 580 (6th Cir.2000). "Merely alleging the existence of a factual dispute is insufficient to defeat a summary judgment motion; rather, there must exist in the record a genuine issue of material fact." *McKenzie*, 219 F.3d at 512 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A material fact is one that has the "potential to affect the outcome of the suit under applicable law." *FDIC v. Anchor Props.*, 13 F.3d 27, 30 (1st Cir.1994) (citations and internal quotation marks omitted). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. *See also Niecko v. Emro Mktg. Co.*, 973 F.2d 1296, 1304 (6th Cir.1992).

Here, Schafer and Rapp have filed cross-motions for summary judgment and agree that no genuine issue of material fact exists. "The fact that both parties make motions for summary judgment, and each contends in support of his respective motion that no genuine issue of fact exists, does not require the Court to rule that no fact issue exists." *Begnaud v. White*, 170 F.2d 323, 327 (6th Cir.1948). But "[a]t the same time, 'cross motions for summary judgment do authorize the court to assume that there is no evidence which needs to be considered other than that which has been filed by the parties.'" *Greer v. United States*, 207 F.3d 322, 326 (6th Cir.2000) (quoting *Harrison W. Corp. v. Gulf Oil Co.*, 662 F.2d 690, 692 (10th Cir.1981)).

## B.  Issue Preclusion

■ Issue preclusion, traditionally referred to as collateral estoppel, is applied to prevent "parties or their privies from relitigating facts and issues in a subsequent suit that were fully litigated in a prior suit." *Thompson v. Wing*, 70 Ohio St.3d 176, 637 N.E.2d 917, 923 (1994). The doctrine conserves judicial resources by minimizing repetitive litigation, protects parties from the cost and inconvenience of multiple lawsuits, and prevents inconsistent results. *See Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Issue preclusion principles apply to dischargeability proceedings in bankruptcy cases. *See Grogan v. Garner*, 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) ("[C]ollateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a).").

■ Courts apply issue preclusion "when a fact or issue '(1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom [issue preclusion] is asserted was a party in privity with a party to the prior action.' " *Corzin v. Fordu (In re Fordu)*, 201 F.3d 693, 704 (6th Cir.1999) (alteration in original) (quoting *Thompson v. Wing*, 637 N.E.2d at 923).

The parties agree that the elements of issue preclusion are satisfied in this case and that the State Court's findings of fact and conclusions of law are entitled to preclusive effect; thus, no further litigation or fact finding is necessary. The issue that divides the parties—and the only question remaining for the Court's determination—is whether the Decision contains factual findings sufficient to establish that the judgment against Rapp is nondischargeable under § 523(a)(2)(A) and/or (a)(6).

## C.  The Debt is Not Excepted from Discharge by 11 U.S.C. § 523(a)(2)(A).

■ "Section 523(a)(2)(A) of the Bankruptcy Code implements the long-standing bankruptcy policy that only those debts which are honestly incurred are entitled to the benefits of a bankruptcy discharge." *Mack v. Mills (In re Mills)*, 345 B.R. 598, 603 (Bankr.N.D.Ohio 2006). "Congress concluded that preventing fraud is more important than letting defrauders start over with a clean slate. . . ." *Mayer v. Spanel Int'l Ltd. (In re Mayer)*, 51 F.3d 670, 674 (7th Cir.1995). In order to promote the fresh start policy of the Bankruptcy Code, this exception to discharge is strictly construed against the creditor. *See Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir.1998). " 'If there is room for an inference of honest intent, the question of nondischargeability must be resolved in favor of the debtor.' " *Jones v. Lawson (In re Lawson)*, 2007 WL 1192453 at *6 (Bankr. N.D.Ohio Apr.23, 2007) (quoting *ITT Fin'l Servs. v. Szczepanski (In re Szczepanski)*, 139 B.R. 842, 844 (Bankr.N.D.Ohio 1991)).

■ Section 523(a)(2)(A) of the Bankruptcy Code provides, in pertinent part, as follows:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

. . . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

11 U.S.C. § 523(a)(2)(A). In *Rembert,* a case in which the creditor sought to except its debt from discharge based on alleged intentional misrepresentations by the debtor, the Sixth Circuit stated as follows:

> In order to except a debt from discharge under § 523(a)(2)(A), a creditor must prove the following elements: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) [the creditor's] reliance was the proximate cause of loss.

*Rembert,* 141 F.3d at 280–81 (footnote omitted). "The objecting creditor bears the burden of proof to establish that the debt is of a type excepted from discharge...." *Hart v. Molino (In re Molino),* 225 B.R. 904, 907 (6th Cir. BAP 1998). *See Nat'l City Bank v. Manning (In re Manning),* 280 B.R. 171, 178–79 (Bankr. S.D.Ohio 2002) ("A creditor has the burden of proving by a preponderance of the evidence that a debt is nondischargeable under § 523(a)(2)(A)." (citing *Grogan v. Garner,* 498 U.S. at 291, 111 S.Ct. 654)).

■ Bankruptcy courts have exclusive jurisdiction to determine the dischargeability of the debts described in § 523(a)(2), (4) and (6) of the Bankruptcy Code. *See* 11 U.S.C. § 523(c); *Dollar Corp. v. Zebedee (In re Dollar Corp.),* 25 F.3d 1320, 1325 (6th Cir.1994) ("Congress intended 'to take the determinations governed by 11 U.S.C. § 523(c) away from state courts and grant exclusive jurisdiction in the bankruptcy courts.'" (quoting *Spilman v. Harley,* 656 F.2d 224, 226 (6th Cir.1981))); *Nationwide Mut. Fire Ins. Co. v. Hale (In re Hale),* 155 B.R. 730, 734 n. 2 (Bankr.S.D.Ohio 1993) ("[D]etermining [the dischargeability of the debts listed in §§ ] 523(a)(2), 523(a)(4) and 523(a)(6)[ ] [is] committed to the *exclusive* jurisdiction of the bankruptcy court pursuant to 11 U.S.C. § 523(c).").

The issue of the dischargeability of Rapp's debt to Schafer accordingly was not—and could not—have been adjudicated by the State Court. Nevertheless, the elements of common law fraud in Ohio are substantially equivalent to those required to establish a nondischargeable debt based on false representation under § 523(a)(2)(A). *See Ed Schory & Sons, Inc. v. Francis (In re Francis),* 226 B.R. 385, 389 (6th Cir. BAP 1998) (concluding that the elements of a § 523(a)(2)(A) claim and a claim for common law fraud are "virtually identical"); *Ohio Bureau of Workers' Comp. v. Foster (In re Foster),* 280 B.R. 193, 205 (Bankr. S.D.Ohio 2002) (same); *Sullivan v. Hallagan (In re Hallagan),* 241 B.R. 544, 546 (Bankr.N.D.Ohio 1999) ("[C]onduct which would render a debt nondischargeable under § 523(a)(2)(A) is equivalent to common law fraud...."). Hence, a state court's determination that a debtor committed common law fraud would necessarily satisfy the elements set forth in *Rembert.* And, conversely, at least one Ohio bankruptcy court has held that a state court's determination that a debtor had *not* committed common law fraud foreclosed a finding of nondischargeability under § 523(a)(2)(A). *See Brentar v. Nishnic (In re Nishnic),* 2006 WL 4458372 at *4 (Bankr.N.D.Ohio Aug.16, 2006). Thus, by adjudicating Schafer's common law fraud claim, the State Court essentially applied the *Rembert* test for determining whether a debt arising from a false representation is excepted from discharge by § 523(a)(2)(A).

■ The Ohio Supreme Court has listed the six elements of common law fraud as follows:

(a) a representation or, where there is a duty to disclose, concealment of a fact;

(b) which is material to the transaction at hand;

(c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred;

(d) with the intent of misleading another into relying upon it;

(e) justifiable reliance upon the representation or concealment; and

(f) a resulting injury proximately caused by the reliance.

*Burr v. Board of County Comm'rs*, 23 Ohio St.3d 69, 491 N.E.2d 1101, 1102 (syllabus ¶ 2) (Ohio 1986). In its Decision, the State Court did not specifically apply or discuss each of the foregoing elements of a common law fraud claim. Nor did the State Court explain how it arrived at the conclusion that it did "not find common law fraud." Decision ¶ 33. However, an analysis of the Decision reveals that the State Court did not make the factual findings required to establish each element of a claim for common law fraud under Ohio law.

The Contractor Agreement provided that, to the extent required by law, all renovation work was to be performed by individuals licensed and authorized by law to perform such work and that Rapp was to obtain all necessary permits. *Id.* ¶ 6. The State Court found that Rapp represented that he was licensed and that he would obtain permits—representations that were material to the contract. In fact, Rapp was not properly licensed, and the proper permits were never obtained. *Id.* ¶ 7. Rapp knew that he was not licensed, and the State Court found that he never intended to comply with his promise to obtain proper permits, indicating that both representations were made falsely. *Id.* ¶¶ 7, 19, 29. The State Court also found that Rapp "was deceptive from the outset about being licensed and obtaining permits, and never intended to comply with those important promises made to induce Mrs. Schafer to hire him." *Id.* ¶ 30. Concluding that Rapp had breached the Contractor Agreement, the State Court awarded $6,000 in compensatory damages. The damage award was based on the State Court's conclusion that while Schafer had paid Rapp $12,300 for the renovation work, the actual value of the work performed was $6,300. The State Court also awarded treble damages under the OCSPA, finding that "Rapp 'knowingly' violated the [O]CS-PA." *Id.* ¶ 31. The Decision therefore reflects that four of the six elements required to impose liability for common law fraud were established by Schafer in the State Court case—*i.e.*, (1) representations by Rapp; (2) that were material to the transaction; (3) made falsely and with knowledge of their falsity; and (4) made with the intent to induce Schafer to rely upon them. *See Burr*, 491 N.E.2d at 1102 (syllabus ¶ 2).

As stated above, the State Court did not explain the basis for its conclusion that it "did not find common law fraud." Decision ¶ 33. But given the State Court's express findings with respect to four elements of the common law fraud claim, its ruling necessarily had to have been based on Schafer's failure of proof with respect to one or both of the remaining elements of the tort—i.e., Schafer must not have established either (1) that she justifiably relied on Rapp's misrepresentations; and/or (2) that the damages she sustained were proximately caused by her justifiable reliance.

█ Schafer argues that the Dischargeability Complaint is not based on

"actual fraud," but rather on the "separate theory of false representations combined with the myriad causes of action articulated under the OCSPA, all of which are aligned along concepts of dishonest, deceptive and unconscionable trade practices in Ohio consumer transactions." Plaintiff's Motion for Summary Judgment at 11. In support of her position, Schafer cites *Longbrake v. Rebarchek (In re Rebarchek)*, 293 B.R. 400 (Bankr.N.D.Ohio 2002). According to Schafer, the *Rebarchek* court ruled that "the treble damage award under the OCSPA, combined with the State Court's ruling that misrepresentations occurred[,] allowed for a ruling under § 523(a)(2)(A) that the debt was not subject to discharge." Plaintiff's Motion for Summary Judgment at 11–12. Schafer's argument is flawed in several respects.

First, Schafer's reliance on *Rebarchek* is misplaced. In *Rebarchek*, a creditor had obtained a state court judgment against the debtor, including treble damages, for violations of the OCSPA. *Rebarchek*, 293 B.R. at 403–04. In deciding whether issue preclusion applied, the court considered whether the issues involved in the nondischargeability action were identical to those adjudicated by the state trial court in the OCSPA suit. *Id.* at 407–08. The *Rebarchek* court found that no showing of wrongful intent was required under the OCSPA and that the standards, although similar, were not identical. *Id.* at 408. "As such, a debtor's violation of the [OCSPA], without more, does not require that the collateral estoppel doctrine be applied to a creditor's cause of action under § 523(a)(2)(A)." *Id.* The court, however, ruled that "for purposes of the third prong of Ohio's collateral estoppel doctrine, any dissimilarities between a cause of action under 11 U.S.C. § 523(a)(2)(A) and the [OCSPA] are cured by the ... additional findings made by the state court." *Id.* Thus, having concluded that issue preclu-

sion applied, the *Rebarchek* court determined that the state court's factual findings established that the judgment debt was nondischargeable. *Id.*

According to Schafer, in *Rebarchek*, it was the state court's additional finding that the defendant made material misrepresentations that overcame the dissimilarities between the § 523(a)(2)(A) and the OCSPA causes of action. A careful reading of *Rebarchek*, however, reflects that the state court also found that the creditor reasonably relied upon the debtor's actions (which violated the OCSPA), that the creditor's reliance proximately caused the damages alleged, and that the debtor engaged in false, misleading and deceptive acts. *See id.* at 403–04. It is evident, then, that the state court's findings addressed each of the *Rembert* elements and that the *Rebarchek* court correctly concluded that the state court had considered and passed upon issues identical to those presented in the dischargeability action. Hence, contrary to Schafer's suggestion, *Rebarchek* does not stand for the proposition that a finding of misrepresentation, coupled with a violation of the OSCPA, will necessarily establish the factual predicate required to support a nondischargeability determination under § 523(a)(2)(A).

Schafer also maintains that the State Court's holding establishes only that the judgment debt did not arise from actual fraud. According to Schafer, the Decision does not foreclose a finding by this Court that the judgment is nondischargeable as a debt arising from a false representation. This argument confuses the three distinct types of debtor misconduct that will support a finding of nondischargeability under § 523(a)(2)(A)—false representation, false pretenses, or actual fraud. Schafer also mistakenly equates "actual fraud" as used in § 523(a)(2)(A) with the tort of common law fraud under Ohio law, which has as an

element an actual material misrepresentation (or, where there is a duty to disclose, concealment of a fact). *See Burr,* 491 N.E.2d at 1102 (syllabus ¶ 2). But, as explained below, "[a]ctual fraud is broader than misrepresentation. Therefore, the cases involving only false representation, misrepresentations· and/or omissions by debtors are distinguishable from ... case[s] ... involving actual fraud." *Mellon Bank, N.A. v. Vitanovich (In re Vitanovich),* 259 B.R. 873, 877 (6th Cir. BAP 2001) (citation omitted).

■■■■ Section 523(a)(2)(A) is phrased in the disjunctive; it describes three distinct categories of debtor misconduct that will give rise to a nondischargeable debt— *i.e.,* debts arising from a false representation, false pretenses, or actual fraud. 11 U.S.C. § 523(a)(2)(A); *Vitanovich,* 259 B.R. at 877 ("The plain language of 11 U.S.C. § 523(a)(2)(A) distinguishes between 'false representation[,]' [false pretenses] and 'actual fraud.' "); *Lubit v. Chase (In re Chase),* 372 B.R. 125, 128 (Bankr.S.D.N.Y. May 18, 2007) ("The three terms used in § 523(a)(2)(A) embody different concepts...."); *Germain Lincoln Mercury of Columbus, Inc. v. Begun (In re Begun),* 136 B.R. 490, 494 (Bankr. S.D.Ohio 1992) ("As the statute is framed in the disjunctive, while a plaintiff asserting a § 523(a)(2)(A) claim must demonstrate that property was obtained by false pretenses, a false representation, or actual fraud, a showing of only one of the offending conducts is required."). To prevail on a claim under § 523(a)(2)(A) based on false representation, a plaintiff must establish each of the elements listed by the Sixth Circuit in *Rembert,* including an actual misrepresentation by the debtor. *See Rembert,* 141 F.3d at 280–81; *Foster,* 280 B.R. at 204. By contrast, an express misrepresentation by the debtor need not be shown to establish a nondischargeable

debt under § 523(a)(2)(A) based on false pretenses or actual fraud.

A "false pretense" involves an implied misrepresentation or conduct intended to create or foster a false impression. A false pretense has been defined to include a "mute charade," where the debtor's conduct is designed to convey an impression without oral representation. A "false representation," on the other hand, is an expressed misrepresentation. *James v. McCoy (In re McCoy),* 114 B.R. 489, 498 (Bankr.S.D.Ohio 1990) (citations omitted). And the phrase "actual fraud" likewise describes misconduct that need not be based on an affirmative misrepresentation by the debtor. It encompasses " 'any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another....' " *McClellan v. Cantrell,* 217 F.3d 890, 893 (7th Cir.2000) (quoting 4 Collier on Bankruptcy ¶ 523.08[1][e], p. 523–45 (15th ed., Lawrence P. King ed., 2000)).

The bankruptcy court in *Nishnic* viewed the terms "false pretenses," "false representation," and "actual fraud"—although they are written in the disjunctive in the statute-as functionally equivalent. *Nishnic,* 2006 WL 4458372 at *3–4. The *Nishnic* court read *Rembert*—which listed "a material misrepresentation" as the first element required to establish nondischargeability under § 523(a)(2)(A), *see Rembert,* 141 F.3d at 280—as "offer[ing] a unifying definition of [a] § 523(a)(2)(A) [claim]" that is "substantially similar to the elements of an Ohio fraud claim." *Nishnic,* 2006 WL 4458372 at *4. The bankruptcy court in *Nishnic* concluded, therefore, that where the issue of fraud had been actually and directly litigated in state court, the "facts underlying plaintiffs' nondischargeability claim under § 523(a)(2)(A) were 'actually and directly litigated' in the state court action" for issue preclusion purposes. *Id.*

The *Nishnic* court accordingly held that a state-court jury verdict of "no fraud" barred the creditors from asserting that the debt in question was incurred through false pretenses or false representations. *Id.*

While the *Nishnic* decision rests on the premise that establishing the four elements articulated by the Sixth Circuit in *Rembert*—the first of which is a material misrepresentation by the debtor—is the exclusive means to obtain a ruling of non-dischargeability under § 523(a)(2)(A), *see id.* at *3–4, other courts have not read the statute or *Rembert* so narrowly. The Sixth Circuit Bankruptcy Appellate Panel in *Vitanovich* adopted "the position of the ... Seventh Circuit [in *McClellan*] that actual fraud as used in 11 U.S.C. § 523(a)(2)(A) is not limited to misrepresentations and misleading omissions." *Vitanovich*, 259 B.R. at 877. Affirming the bankruptcy court's determination that a debt arising from the debtor's involvement in a check kiting scheme was nondischargeable, the BAP explained that "[w]hen a debtor intentionally engages in a scheme to deprive or cheat another of property or a legal right, that debtor has engaged in actual fraud and is not entitled to the fresh start provided by the Bankruptcy Code." *Id.* at 877.

The fact patterns of *Vitanovich* and *McClellan* illustrate that an objecting creditor need not in all cases demonstrate that the debtor made an express fraudulent representation—and that the creditor justifiably relied thereon—to obtain a judgment excepting a debt from discharge under § 523(a)(2)(A). As noted, in *Vitanovich* the BAP affirmed the bankruptcy court's finding that the debtor had engaged in a classic check kiting scheme. *Id.* at 877–78. The BAP concluded that while the check kiting scheme did not involve an express misrepresentation by the debtor, the debt in question was nondischargeable under § 523(a)(2)(A) because it arose from actual fraud. *Id.* at 878 ("A check kiting scheme falls into the broad definition of 'actual fraud'....").

In *McClellan*, the debtor also engaged in a fraudulent scheme that did not involve an express misrepresentation. There, a creditor sold certain assets to the debtor's brother for $200,000, payable in installments, and retained a security interest in the assets. *McClellan*, 217 F.3d at 892. The debtor's brother defaulted, and when the creditor sued, the brother sold the assets to the debtor for $10. The debtor, with knowledge of the creditor's lawsuit against her brother, then resold the assets for $160,000. The debtor thereafter filed for Chapter 7 bankruptcy protection, and the creditor initiated an adversary proceeding. The bankruptcy court dismissed the complaint, and the district court affirmed, finding the debt was dischargeable under § 523(a)(2)(A), absent a showing of material misrepresentation and reliance on the misrepresentation. *Id.* The Seventh Circuit reversed, concluding that, despite the absence of a misrepresentation and reliance thereon, the scheme involved "actual fraud":

> [T]he debtor's brother was *deliberately* attempting to thwart [the creditor's] effort to collect the debt due him. And while it is true that [the creditor] did not rely on the brother's retaining the security for the loan, reliance is relevant only when a fraud takes the form of a misrepresentation. And that, as we have emphasized, is not the only form that fraud can take or the only form that makes a debt nondischargeable, given that debts created by misrepresentations constitute a separate category of nondischargeable debts.

*Id.* at 894. The *McClellan* court held that "the statute makes clear that actual fraud

is broader than misrepresentation[,]" reasoning that

> [f]raud is a generic term, which embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by the suppression of truth. No definite and invariable rule can be laid down as a general proposition defining fraud, and it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated.

*Id.* at 893 (internal quotation marks omitted). *Vitanovich* and *McClellan* thus make clear that "actual fraud" is a category of debtor misconduct that is separate and distinct from fraudulent representation, and that a creditor alleging actual fraud need not demonstrate justifiable reliance on an actual misrepresentation by the debtor in order to obtain a judgment of nondischargeability under § 523(a)(2)(A).

██ While there are three separate types of debtor misconduct that will support a nondischargeability judgment under § 523(a)(2)(A), Schafer's claim is based on false representation. *See* Dischargeability Compl. ¶ 9 ("The debt related to the final judgment was based [on] money obtained by Mr. Rapp from Plaintiff, and predicated upon the representation that he was licensed in Ohio to conduct work for which he contracted with Plaintiff."), ¶ 10 ("This representation was determined to be both 'false' and concerning a 'very significant fact', that ultimately induced Plaintiff to contract with Mr. Rapp.") and ¶ 11 ("Plaintiff suffered significant damages as a result of Mr. Rapp's false representation, and therefore, her damage claim should be determined non-dischargeable in this bankruptcy case pursuant to 11 U.S.C. § 523(a)(2)(A).""). The Dischargeability Complaint does not allege conduct by Rapp that would constitute "false pre-

tenses"—*i.e.*, "a 'mute charade,' where the debtor's conduct is designed to convey an impression without oral representation." *McCoy*, 114 B.R. at 498. Nor does Schafer's Dischargeability Complaint allege "actual fraud," as that phrase has been defined in the case law—*i.e.*, as a category of debtor misconduct separate and distinct from false representation, involving a scheme or artifice, such as the check kiting scheme in *Vitanovich* or the scheme employed by the debtor in *McClellan* to place assets beyond the reach of her brother's creditors.

Further, the fraud claim asserted by Schafer in her State Court Complaint also was based on actual false representations made by Rapp. *See* State Court Compl. ¶¶ 1–18. Again, in State Court Schafer did not allege false pretenses or a scheme based on something other than express representations by Rapp. *See id.* Thus, the elements that Schafer must prove in this adversary proceeding to establish her § 523(a)(2)(A) false representation claim mirror those that she was required to prove in State Court to obtain a judgment for common law fraud under Ohio law. *See Rembert*, 141 F.3d at 280–81 (setting forth the elements required to obtain a judgment under § 523(a)(2)(A) based on false representation); *Burr*, 491 N.E.2d at 1102 (syllabus ¶ 2) (listing the elements of a fraudulent misrepresentation claim under Ohio law). In sum, because the common law fraud claim asserted by Schafer in State Court was predicated on *actual false representations* by Rapp, the State Court's "no fraud" finding necessarily precludes a determination by this Court of nondischargeability based on false representation under § 523(a)(2)(A).

**D. The Debt is Not Excepted from Discharge by 11 U.S.C. § 523(a)(6).**

██ Section 523(a)(6) excepts from discharge "any debt for willful and malicious

injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The terms "willful" and "malicious" are not expressly defined in the Bankruptcy Code.

Because the word "willful" modifies the word "injury," "nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). A willful injury results when the actor either desires to cause the consequences of his actions or "believes that the consequences are substantially certain to result" from his actions. *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir.1999) (internal quotation marks omitted). A debtor "must will or desire harm, or believe injury is substantially certain to occur as a result of his behavior." *Id.* at 465 n. 10.

A person has acted "maliciously" when that person acts "in conscious disregard of his duties or without just cause or excuse." *Gonzalez v. Moffitt (In re Moffitt)*, 252 B.R. 916, 923 (6th Cir. BAP 2000); *Murray v. Wilcox (In re Wilcox)*, 229 B.R. 411, 419 (Bankr.N.D.Ohio 1998). There is no requirement that the person act with ill will, spite, or animosity toward the injured party. *Grange Mut. Cas. Co. v. Chapman (In re Chapman)*, 228 B.R. 899, 909 (Bankr.N.D.Ohio 1998). While willfulness and malice may often exist concurrently in the same set of facts, each is a distinct element in the § 523(a)(6) analysis; both requirements must be met to warrant a determination of nondischargeability. *Superior Metal Prods. v. Martin (In re Martin)*, 321 B.R. 437, 442 (Bankr.N.D.Ohio 2004).

The State Court found that "Mr. Rapp acted with an actual awareness of the material obligations he owed under th[e] con-tract, but that he consciously short-cut many of them which were material to the contract." Decision ¶ 31. Schafer contends that, by consciously short-cutting the remodeling work, Rapp intended to cause injury to Schafer and the property.

It is clear from the Decision that Rapp performed the work in a less than workmanlike manner and thereby breached the contract. But breach of contract is not sufficient grounds to find nondischargeability under the willful and malicious injury standard. *See Salem Bend Condo. Ass'n v. Bullock–Williams (In re Bullock–Williams)*, 220 B.R. 345, 347 (6th Cir. BAP 1998) ("Applying *Geiger*, [plaintiff] must demonstrate that the Debtor intended to cause harm by [breaching the contract]. This encompasses more than just the 'knowing breach of contract' that was alleged."). The State Court recited an extensive list of work performed improperly or incompletely, such as uneven flooring, carelessly installed faceplates and outlet covers, windows painted shut, and plumbing, electrical, and structural work not completed in compliance with applicable building codes. The numerous listed deficiencies, however, reflect work performed negligently or carelessly, not work performed with the intent to cause harm. *See, e.g., Vaughn v. Quinn (In re Quinn)*, 170 B.R. 1013, 1018–19 (Bankr.E.D.Mo. 1994) (holding that debtor-contractor's breach of contract, failure to perform in a workmanlike manner, and failure to comply with applicable building codes, absent evidence that debtor intended to cause the harm or was substantially certain that harm would result, did not rise to the level of malice necessary to find a judgment debt nondischargeable). Section 523(a)(6) does not except from discharge injuries that are negligently, or even recklessly, inflicted. *See Geiger*, 523 U.S. at 64, 118 S.Ct. 974. The Decision accordingly does

not establish that Rapp deliberately or intentionally injured Schafer or her property, or that he believed with substantial certainty that his actions would cause such injury. The judgment, therefore, is not a debt for a willful and malicious injury and is not excepted from discharge by 11 U.S.C. § 523(a)(6).

## IV. Conclusion

For these reasons, the Court concludes that Rapp is entitled to judgment as a matter of law. The Court shall enter a separate judgment providing that the $26,500 judgment debt owed by Rapp to Schafer is not excepted from discharge by 11 U.S.C. § 523(a)(2)(A) or (a)(6).

**IT IS SO ORDERED.**