In re Robert H. GRIMSLEY,
Jr., Debtor.

Chad Miller, Plaintiff,

v.

Robert H. Grimsley, Jr., Defendant.

Bankruptcy No. 09–61150.
Adversary No. 10–2005.

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division at Columbus.

May 31, 2011.

J. Matthew Fisher, Nicholas R. Barnes, Allen, Kuehnle Stovall & Neuman LLP, Columbus, OH, for Plaintiff.

James E. Nobile, Matthew J. Thompson, Nobile & Thompson Co., L.P.A., Hilliard, OH, for Defendant.

### MEMORANDUM OPINION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

JOHN E. HOFFMAN JR., Bankruptcy Judge.

## I. Introduction

This dischargeability proceeding arises from a failed business relationship between the debtor, Robert H. Grimsley, Jr. ("Debtor" or "Grimsley"), and the plaintiff, Chad Miller ("Miller"). In September 2004, the parties entered into an oral agreement under which they would form a business to sell roofing service contracts to, and install roofs for, customers in Brevard County, Florida. Grimsley agreed to create a Florida corporation—Installers Plus, Inc. ("IPI")—and to manage, among other things, the company's office payroll and accounting. Miller agreed to secure the Florida license necessary for IPI to install and repair roofs. Each party agreed to train and hire sales staff and roofing contractors, order materials and ensure that materials were transported to contract sites. They also agreed to share in IPI's profits equally.

A dispute arose when Grimsley did not remit to Miller one-half of IPI's net profits in accordance with the parties' agreement. On February 24, 2006, Miller filed a complaint against Grimsley in the Franklin County, Ohio Court of Common Pleas ("State Court"), initiating a civil action captioned *Chad Miller v. Robert Grimsley and Robert Grimsley dba Installers Plus Inc./Florida*, Case No. 06 CV 002623 ("State Court Case"). In the complaint he

filed in State Court, Miller asserted two claims for relief against Grimsley: (1) breach of contract; and (2) fraud and/or unjust enrichment. The State Court Case concluded with a jury verdict in favor of Miller and against Grimsley, which Grimsley challenged by way of a motion for judgment notwithstanding the verdict ("JNOV Motion"). In addition to actual damages and other costs, as the Court will detail below, the jury awarded Miller punitive damages in the amount of $4,377.98 and attorney fees, as reflected in the Final Entry of Judgment for the Plaintiff ("Judgment"). Neither the verdict form nor the "Special Interrogatories" completed by the jury expressly stated that Grimsley was guilty of fraud. Nonetheless, the State Court denied the JNOV Motion, and Grimsley did not appeal the verdict.

Miller commenced this adversary proceeding by filing a complaint ("Complaint") (Doc. 1) seeking a determination that the debt arising from the Judgment ("Debt") is excepted from discharge under 11 U.S.C. § 523(a)(2)(A), (4) and (6). Miller filed a motion for summary judgment requesting that the Court apply the doctrine of issue preclusion and determine as a matter of law that the Debt is nondischargeable under § 523(a)(2)(A).[1] At issue is whether the Court may infer a finding of fraud from the jury's award of punitive damages and attorney fees against Grimsley in the State Court Case. For the reasons explained below, the Court concludes that the doctrine of issue preclusion applies—notwithstanding the lack of an express finding of fraud by the jury in the State Court Case—and Miller therefore is entitled to summary judgment on his

---

1. Miller has not moved for summary judgment on his § 523(a)(4) and (6) nondischarge- ability claims.

§ 523(a)(2)(A) nondischargeability claim. Accordingly, the Motion will be granted.

## II. Jurisdiction

The Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference entered in this district. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(I).

## III. Procedural Background

On September 28, 2009, Grimsley filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code together with his schedules of assets and liabilities (Doc. 1 in Case No. 09–61150). On Schedule F (Creditors Holding Unsecured Claims), Grimsley listed the Debt to Miller—in the amount of $148,000. He did not list the Debt as contingent, unliquidated or disputed.

As stated above, the Complaint seeks a determination that the Debt is excepted from discharge by § 523(a)(2)(A), (4) and (6). The Complaint sets forth only one claim for relief—entitled "COUNT ONE; FRAUD"—but requests the following: (1) a determination that the Debt is nondischargeable under § 523(a)(2)(A) because it is a "debt . . . for money obtained by false pretenses, false representation, and actual fraud[,]" Compl. ¶ 18; (2) a determination that the Debt also is nondischargeable under § 523(a)(4) on the basis of fraud, defalcation while acting in a fiduciary capacity or embezzlement, *see id.* ¶ 19; and (3) a declaration that Grimsley's actions that gave rise to the Judgment were willful and malicious and, thus, the Debt is nondischargeable under § 523(a)(6). *See id.* ¶ 20.

Following a pretrial conference, the parties filed the following: (1) Motion of Plaintiff Chad Miller for Summary Judgment ("Motion") (Doc. 15); (2) Response to Motion of Plaintiff Chad Miller for Summary Judgment ("Response") (Doc. 19); (3) Addendum to the Motion of Plaintiff Chad Miller for Summary Judgment ("Addendum") (Doc. 20, Ex. A) [2]; and (4) Reply in Support of the Motion of Plaintiff Chad Miller for Summary Judgment ("Reply") (Doc. 22).

## IV. Undisputed Facts

Miller's Statement of Material Facts is drawn from the jury's factual determinations made in the State Court Case—as expressed in its verdict and the Special Interrogatories—from which he contends the Court can infer that the Debt was incurred as a result of Grimsley's fraudulent conduct. The history of proceedings in the State Court Case is summarized below.

In the State Court Case, Miller asserted two causes of action against Grimsley: (1) breach of contract; and (2) fraud and/or unjust enrichment. The case went before the State Court for a jury trial on January 26, 2009. On February 5, 2009, the jury returned a verdict in favor of Miller. The jury completed a verdict form ("Verdict Form"), which states: "We the Jury, being duly impaneled and sworn, do hereby render a verdict for the Plaintiff Chad Miller and we award actual damages to Plaintiff in the amount of $109, 463 and punitive

---

**2.** On October 26, 2010, Miller filed a motion for leave to file the Addendum. The Addendum included a "Statement of Material Facts," which, under the policies and procedures governing summary judgment motions published on the Court's website, must be filed by a party seeking summary judgment. The original Motion filed by Miller had omitted a Statement of Material Facts. On No-

vember 5, 2010, the Court entered an agreed order permitting the filing of the Addendum and "deem[ing] [it] filed as of the date of the filing of the [Motion]." *See* Agreed Order Granting Plaintiff Chad Miller Leave to File the Addendum to the Motion of Plaintiff Chad Miller for Summary Judgment, Instanter (Doc. 21) at 2.

damages in the amount of $4,377.98. We the jury also award Chad Miller his reasonable attorney fees." Motion, Ex. D, Certified Copy of Verdict Form; Addendum ¶ 5. The jury also completed the Special Interrogatories, stating the following conclusions:

(A) DO YOU FIND THAT THE DEFENDANTS BREACHED THE CONTRACT? CIRCLE YOUR ANSWER IN INK **YES**[3] or NO

[signatures of members of the jury]

If your answer is no, you are finished and you can sign the general verdict form for defendants. If your answer is yes, move to Interrogatory (B).

(B) HAVING FOUND DEFENDANTS ARE IN BREACH, WE THE JURY AWARD $ **109,463** IN ACTUAL DAMAGES.

[signatures of members of the jury]

Move to Interrogatory C.

(C) IN ADDITION TO ACTUAL DAMAGES, WE, THE JURY, MAKE AN ADDITIONAL AWARD TO THE PLAINTIFF OF $ **4,377.98** * AS PUNITIVE DAMAGES, AND WE DECIDE THAT ATTORNEY FEES **Should** * * BE AWARDED AGAINST THE DEFENDANT.

[signatures of members of the jury]

* INSERT in ink either "NONE" or the dollar amount.

* * INSERT either "SHOULD" or "SHOULD NOT"

*See* Motion, Ex. D, Certified Copy of Special Interrogatories; Addendum ¶¶ 6–7.

After an evidentiary hearing, the State Court determined that Miller was entitled to attorney fees in the amount of $5,467.49. *See* Addendum ¶ 8. The State Court rejected Grimsley's contention that the jury's award of attorney fees was improper, stating:

[t]he award of attorney fees is based on the verdict in favor of Plaintiff award[ing] punitive damages.... Plaintiff's attorney testified that Plaintiff would not be entitled to attorney fees had the jury not awarded punitive damages. Plaintiff would not be entitled to attorney fees if the jury's verdict was limited to actual damages.

Motion, Ex. E, Decision (1) Granting Plaintiff's Motion for Prejudgment Interest, Filed February 18, 2009, and (2) Granting Plaintiff's Motion for Attorney Fees, Filed February 23, 2009 at 7. The State Court reaffirmed its determination that the jury's attorney fee award in favor of Miller was supported by the evidence when it entered an order denying the JNOV Motion, which stated:

On February 5, 2009, the jury returned a verdict in favor of plaintiff.... On June 11, defendants filed their motion for judgment notwithstanding the verdict. Defendants argue that "[n]o evidence was presented ... that at the time of the oral agreement between the parties ..., Defendant Grimsley knew that his offer to pay Plaintiff 50% of the net profits of the Florida business was false or that such statement was made in utter and reckless disregard of its truth or falsity" and that "not only was there no direct evidence which would support the Court's ruling, but there was no direct evidence upon which the jury could base such an inference."

In response, plaintiff argues that "[t]he jury had ample evidence upon which to render an award of fraud," that

---

**3.** The bold typeface contained in the Special Interrogatories reproduced above reflects the jury's responses to each interrogatory.

"[t]he punitive award was not excessive or out of line with actual damages," and that "the jury understood the Plaintiff's burden to establish that Defendant knew of the falsity of his statement at the time it was made."

In this regard, defendants have not shown that plaintiff has "failed to adduce any evidence" in support of his claim, and the evidence formed a reasonable basis on which the jury could base its verdict. Also, in deciding a Civ. R. 50(B) motion, the evidence is to be construed "most strongly" in the non-moving party's favor, and a court may not re-weigh the evidence of the witnesses' credibility. Thus, when the evidence is construed in favor of plaintiff, defendants' JNOV motion is unwarranted."

Motion, Ex. C., Decision Denying Defendants' Motion for JNOV, Filed June 11, 2009 ("JNOV Order"), at 2–3.

The Judgment awarded Miller a total of $147,021.45, consisting of (1) $109,463 in compensatory damages; (2) $4,377.98 in punitive damages; (3) $22,206.22 in prejudgment interest; (4) $5,467.49 in attorney fees; and (5) other costs for Miller's depositions and expert witnesses. Grimsley did not appeal the Judgment. *See* Addendum ¶¶ 14–15.

Grimsley's Response, which does not directly contest the factual allegations contained in Miller's Statement of Material Facts, boils down to two essential points. First, he "denies to this day that he has committed any fraud or fraudulent act in any business dealings with [Miller][.]" Response at 2. Second, he contends that the Judgment "does not list, specify, mention or journalize any finding by the State Court that [he] committed any type of fraud." Id.

## V. Arguments of the Parties

Miller contends that he is entitled to summary judgment under § 523(a)(2)(A)

because "the Judgment entered in the State Court Case contains a finding of fraud against Grimsley sufficient to make the debt incurred as a result of Grimsley's misconduct nondischargeable...." Motion at 5. Urging the Court to apply the doctrine of issue preclusion, Miller argues that the Judgment conclusively establishes that the Debt arose from Grimsley's fraudulent conduct and thus is nondischargeable under § 523(a)(2)(A). *See id.* at 6. The Judgment has preclusive effect, Miller asserts, because the issue of whether Grimsley engaged in fraud was actually and directly litigated in the State Court Case, and a finding of fraud was a necessary prerequisite to the jury's award of punitive damages and attorney fees. Although he concedes that neither the Judgment nor the Special Interrogatories "contain an explicit finding of fraud," Miller maintains that "fraud may be inferred from the ... [S]tate [C]ourt's award of punitive damages and attorneys' fees...." Id. at 10.

For his part, Grimsley argues that the doctrine of issue preclusion should not be applied in this adversary proceeding—and summary judgment is therefore not appropriate—because "a [c]ourt only speaks through its entries[,]" Response at 4, and the "State Court journalized decision did not contain any language stating that [Grimsley] had committed or had been proven to have committed any type of fraud." Response at 2. Given "the lack of any mention or finding of fraud in the journalized entry of the [S]tate [C]ourt[,]" Grimsley asserts that the Court may not infer that a finding of fraud was made by the jury in the State Court Case. Id. at 4–5. Relying on this Court's decision in *Schafer v. Rapp (In re Rapp)*, 375 B.R. 421, 429 (Bankr.S.D.Ohio 2007), Grimsley also contends that because the Court failed to accord preclusive effect to a state court judgment in that dischargeability case, it

should likewise decline to do so here. According to Grimsley, whether the Debt arises from fraud is "an issue of material fact that must be adjudicated by this Court and cannot be inferred or disposed of through the summary judgment process." Response at 5.

## VI. Legal Analysis

### A. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56 ("Civil Rule 56"), made applicable in this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).[4] "On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Ricci v. DeStefano*, —— U.S. ——, 129 S.Ct. 2658, 2677, 174 L.Ed.2d 490 (2009) (internal quotation marks omitted). A dispute is genuine only if it is "based on evidence upon which a reasonable [finder of fact] could return a [judgment] in favor of the non-moving party." *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 270 (6th Cir. 2009). And a "factual dispute concerns a 'material' fact only if its resolution might affect the outcome of the suit under the governing substantive law." *Id.*

### B. Issue Preclusion

■ As previously stated, in seeking summary judgment on his § 523(a)(2) claim, Miller relies on the doctrine of issue preclusion.[5] Issue preclusion "applies in the context of dischargeability litigation." *Bachinski*, 393 B.R. at 534 (citing *Rally Hill Prods., Inc. v. Bursack (In re Bursack)*, 65 F.3d 51, 53 (6th Cir.1995) ("The doctrine of collateral estoppel applies in dischargeability actions under 11 U.S.C. § 523(a).")); *State of Ohio, Bureau of Workers' Comp. v. Foster (In re Foster)*, 280 B.R. 193, 200 (Bankr.S.D.Ohio 2002) (same). That bankruptcy courts exercise "exclusive jurisdiction over dischargeability issues does not alter this rule." *Bachinski*, 393 B.R. at 535 (internal quotation marks omitted).[6] *See also Marrese v. Am.*

---

4. Pursuant to an amendment to Civil Rule 56 that became effective on December 1, 2010 (after this adversary proceeding was commenced), the summary judgment standard now appears in Civil Rule 56(a) rather than, as it formerly did, Civil Rule 56(c). *See* Fed. R.Civ.P. 56 Advisory Committee Notes (2010 Amendments) ("Subdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c)...."). The Court is citing the amended rule given that application of "the amended version of [Civil] Rule 56 in this case is just and practicable and would not work a manifest injustice, because the amendments do not change the summary judgment standard or burdens." *Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777, 782 n. 4 (1st Cir.2011); *see also Martinez v. Hutton (In re Harwell)*, 628 F.3d 1312, 1316–17 n. 4 (11th Cir.2010) ("Amendments to the Federal Rules of Civil Procedure govern proceedings after the date they are effective in an action then pending unless the Supreme Court specifies otherwise or the court determines that applying them in a particular action would be infeasible or work an injustice. Fed.R.Civ.P. 86(a). We apply the language of Rule 56 as amended.").

5. The Court uses the term issue preclusion instead of collateral estoppel because "the United States Supreme Court has expressed a preference for use of the terms 'issue preclusion' and 'claim preclusion' rather than the traditional phrases 'res judicata' and 'collateral estoppel.'" *Wagner v. Schulte (In re Schulte)*, 385 B.R. 181, 188 n. 5 (Bankr. S.D.Ohio 2008) (citing *Corzin v. Fordu (In re Fordu)*, 201 F.3d 693, 702–03 (6th Cir.1999)). *See also Simmons Capital Advisors, Ltd. v. Bachinski (In re Bachinski)*, 393 B.R. 522, 534 n. 5 (Bankr.S.D.Ohio 2008).

6. Bankruptcy courts have exclusive jurisdiction to determine the dischargeability of the debts described in § 523(a)(2) of the Bank-

*Acad. of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985) ("[A] state court judgment may in some circumstances have preclusive effect in a subsequent action within the exclusive jurisdiction of the federal courts."); *Harley,* 656 F.2d at 227 ("[T]hat Congress intended the bankruptcy court to determine the final result—[of] dischargeability or not—does not require the bankruptcy court to redetermine all the underlying facts.").

■ Issue preclusion obviates the need to relitigate " 'an issue that has been actually and necessarily litigated and determined in a prior action.' " *Foster,* 280 B.R. at 200 (quoting *MetroHealth Med. Ctr. v. Hoffmann–LaRoche, Inc.,* 80 Ohio St.3d 212, 685 N.E.2d 529, 533 (1997)). The party invoking the issue—preclusion doctrine "has the burden of establishing its applicability." *Bachinski,* 393 B.R. at 535. And state law—here Ohio law—"dictates whether a state court judgment should be afforded issue-preclusive effect." *Id.* (citing *Ed Schory & Sons, Inc. v. Francis (In re Francis),* 226 B.R. 385, 388 (6th Cir. BAP 1998) ("The Sixth Circuit has held that the application of collateral estoppel in a nondischargeability action depends upon whether the applicable state law would give collateral estoppel effect to the judgment.")). In Ohio, a court may apply issue preclusion to a judgment where:

1) [There is a] final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue;

2) The issue [was] actually and directly litigated in the prior suit and must have been necessary to the final judgment; 3) The issue in the present suit [is] identical to the issue in the prior suit; [and] 4) The party against whom estoppel is sought was a party or in privity with the party to the prior action.

*Sill v. Sweeney (In re Sweeney),* 276 B.R. 186, 189 (6th Cir. BAP 2002) (quoting *Gonzalez v. Moffitt (In re Moffitt),* 252 B.R. 916, 921 (6th Cir. BAP 2000)). *See also Rapp,* 375 B.R. at 429 ("Courts apply issue preclusion 'when a fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom [issue preclusion] is asserted was a party in privity with a party to the prior action.' ") (quoting *Fordu,* 201 F.3d at 704 (alteration in original)).

As an initial matter, the Court concludes that Miller has satisfied three of the four elements of the test articulated in *Sweeney* for determining whether a nonbankruptcy court's judgment is entitled to issue-preclusive effect in a dischargeability action. First, the Judgment is a final judgment on the merits rendered by the jury in the State Court Case after Grimsley had a full and fair opportunity to litigate the issues through his participation in the jury trial and by his filing the JNOV Motion. Second, the issue raised by Count Two of Miller's State Court complaint—whether Grimsley engaged in fraud—is identical to the issue on which the Debtor's § 523(a)(2) liability hinges in this adversary proceed-

ruptcy Code. *See* 11 U.S.C. § 523(c); *Dollar Corp. v. Zebedee (In re Dollar Corp.),* 25 F.3d 1320, 1325 (6th Cir.1994) ("Congress intended 'to take the determinations governed by 11 U.S.C. § 523(c) away from state courts and grant exclusive jurisdiction in the bankruptcy courts.' ") (quoting *Spilman v. Harley,* 656 F.2d 224, 226 (6th Cir.1981)); *Nationwide Mut. Fire Ins. Co. v. Hale (In re Hale),* 155 B.R. 730, 734 n. 2 (Bankr.S.D.Ohio 1993) ("[D]etermining [the dischargeability of the debts listed in §§ ] 523(a)(2), 523(a)(4) and 523(a)(6)[ ] [is] committed to the *exclusive* jurisdiction of the bankruptcy court pursuant to 11 U.S.C. § 523(c)."). The issue of the dischargeability of Grimsley's debt to Miller accordingly was not—and could not have been—adjudicated by the State Court.

ing. Third, there is an identity of parties—Miller and Grimsley—in this adversary proceeding and the State Court Case. Thus, whether the Judgment should be accorded issue-preclusive effect and thereby establish the Debt's nondischargeability under § 523(a)(2)(A) turns on the second prong of the *Sweeney* test. That is, the Judgment is entitled to preclusive effect here if the Court finds that the issue of fraud was "actually and directly litigated" in the State Court and was "necessary to the [court's] final judgment." *Sweeney,* 276 B.R. at 189.

■ Without question, the Judgment and the Special Interrogatories make no specific finding of fraud by Grimsley. Yet Miller maintains that the issue of fraud was both actually and directly litigated and necessary to the final judgment rendered by the State Court. The jury could not have awarded punitive damages and attorney fees under Ohio law, Miller argues, without first deciding that Grimsley's conduct was fraudulent. Motion at 7. Grimsley counters that the Court cannot infer fraud in the absence of a specific finding of fraud in the Verdict Form, the Special Interrogatories or the Judgment. Response at 3.

■ The general rule under Ohio law is that a party may not recover punitive damages in an action for breach of contract. *See Ketcham v. Miller,* 104 Ohio St. 372, 136 N.E. 145, 145 (syllabus ¶ 2) (Ohio 1922) ("Punitive damages are not recoverable in an action for breach of contract."); *Tibbs v. Nat'l Homes Constr. Corp.,* 52 Ohio App.2d 281, 369 N.E.2d 1218, 1224 (1977) ("We take it to be settled law ... that punitive damages are not appropriate to and may not be awarded in actions *ex contractu.*"). An exception to this rule exists, however, "where the breach of contract is accompanied by a connected, but independent tort involving fraud, malice or oppression." *Stockdale v. Baba,* 153 Ohio App.3d 712, 795 N.E.2d 727, 747 (2003). And "in order for the issue of punitive damages to properly be submitted to the jury, the party seeking punitive damages must present not only evidence of a breach of contract, but also evidence of conduct constituting a connected, but independent tort, together with evidence of fraud, malice or oppression." *Id.* at 747. *See also Armstrong v. Feldhaus,* 87 Ohio App. 75, 93 N.E.2d 776, 780 (1950) ("Where the acts constituting a breach of contract also amount to a cause of action in tort, there may be a recovery of exemplary damages upon proper allegations and proof.... In order to permit a recovery, however, the breach must be attended by some intentional wrong, insult, abuse, or gross negligence which amounts to an independent tort." (internal quotation marks omitted)).

As stated above, Miller asserted two claims for relief against Grimsley in his State Court complaint: (1) breach of contract; and (2) fraud and/or unjust enrichment. Miller's complaint sets forth the following allegations in support of his fraud claim:

17. Defendant Grims[le]y and Defendant Installers Plus Florida, through its officer, Defendant Grimsley, represented to Plaintiff that it would in fact pay ½ of the net profits from the roofing contracts, as per their Agreement, to the Plaintiff.

18. Defendant Installers Plus Florida and Defendant Grimsley knew or should have known when making said representations to Plaintiff that Plaintiff would rely on said representations.

19. Plaintiff did in fact rely on said representations and performed all services agreed to.

20. When making these representations to Plaintiff, Defendant Grimsley knew the same to be false but made

same in order to induce Plaintiff into providing services described in paragraph 6.

21. When making these representations to Plaintiff, Defendant Grimsley had no intention of ever paying the Plaintiff his ½ net profit[.]

22. Plaintiff relied in good faith on Defendant Grimsley's representation and as a direct and proximate result thereof has been damaged in an amount in excess of $25,000.00.

. . . .

24. All named Defendants herein when undertaking these actions complained of, did so deliberately, maliciously, willfully, and wantonly and with a gross and total disregard for the rights and property interests of Plaintiff and with the intention to defraud Plaintiff.

Motion, Ex. A, Certified Copy of State Court Complaint ¶¶ 17–22, 24.

The instructions relating to the fraud claim and the recoverability of punitive damages that were submitted to the jury in the State Court Case included, in relevant part, the following:

**307.01 Introduction; fraud defined**

1. INTRODUCTION. There is also a claim of fraud. The fraud must occur at the time the parties entered into the agreement.

2. FRAUD DEFINED. Fraud is a civil wrong. It is a deception practiced with a view to gaining an unfair advantage.

Fraud is also a false representation of fact, whether by words, conduct or concealment which misleads and is intended

to mislead another so that he relies on it to his injury.

**307.03 Elements of fraud**

1. ELEMENTS. The plaintiff must prove by the greater weight of the evidence[7] each of the following elements:

(A)(1) A false representation of fact was made with knowledge of its falsity[.]

(B) The representation was material to the transaction.

(C) The representation was made with the intent of misleading plaintiff into relying upon it.

(D) The plaintiff was justified in relying on the representation, and did, in fact, so rely.

(E) The plaintiff was injured and the injury was directly caused by his reliance on the representation.

. . . .

**307.15 Fraud Damages**

If you find for the plaintiff, you will decide from the greater weight of the evidence what amount of money will reasonably compensate him for the actual damage directly caused by the fraud.

**23.70 Punitive damages**

1. SEPARATE AWARD. If you find for the [p]laintiff and award actual damages, you may also consider whether you will separately award punitive damages. *If you do not find actual damage, you cannot consider punitive damages.*

2. FRAUD. Punitive damages may be awarded against the defendant as a punishment to discourage others from committing similar wrongful acts. You are not required to award punitive damages to the plaintiff, and *you may not do so unless you find by the greater weight of*

---

**7.** Jury Instruction 3.50 defines the "greater weight of the evidence" as a preponderance of the evidence standard, which is also the applicable standard in dischargeability proceedings. *See Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

*the evidence that the defendant acted with aggravated or egregious fraud.*

3. AGGRAVATED AND EGREGIOUS. Fraud is "aggravated" if it is accompanied by the existence of malice or ill will. Fraud is "egregious" if the fraudulent wrongdoing is particularly gross.

Motion, Ex. B, Certified Copy of the Jury Instructions ("Instructions") (emphasis added).

The fact that the jury awarded punitive damages to Miller is not in dispute. Given the Instructions, the only basis for the jury's award of punitive damages is a finding that Grimsley had committed "aggravated or egregious fraud." Indeed, the only tort claim set forth in Miller's State Court complaint is a claim for fraud, and the Instructions make clear that an award of punitive damages would be proper only if the jury found that Grimsley had acted with aggravated and egregious fraud. Id. There is nothing in the record suggesting that the jury did not properly follow the Instructions given by the State Court. And, in any event, the jury is presumed to have followed the State Court's instructions. *See Zafiro v. U.S.,* 506 U.S. 534, 540, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993) ("[J]uries are presumed to follow their instructions." (internal quotation marks omitted)); *Pang v. Minch,* 53 Ohio St.3d 186, 559 N.E.2d 1313, 1315 (syllabus ¶ 4) (Ohio 1990) ("A presumption always exists that the jury has followed the instructions given to it by the trial court."). Furthermore, the State Court determined that the punitive damages award was proper when it denied Grimsley's JNOV Motion, stating: "Because the jury's verdict was made in accordance with the applicable law and sufficient evidence existed to support the jury's verdict, the Court declines to grant a JNOV." JNOV Order at 3. Based on these documents, the fact that Ohio law

prohibits the awarding of punitive damages in a breach-of-contract action unless the defendant commits a separate and independent tort, and "[g]iven that the only cause of action in tort Miller pursued was for fraud," Miller urges the Court to conclude that "the jury necessarily rendered its decision on fraud and awarded damages in accordance with Ohio law." Motion at 9. In support of this position, Miller relies on *Cal–Micro, Inc. v. Cantrell (In re Cantrell),* 329 F.3d 1119 (9th Cir.2003) and *Lee v. Adair (In re Adair),* No. 08–10704, 2009 WL 765052, 2009 Bankr.LEXIS 691 (Bankr.N.D.Cal. Jan. 14, 2009).

In *Cantrell,* several creditors of Michael Cantrell—Cal–Micro, Inc., the Cal–Micro, Inc. Employee Stock Option Plan and the Pauline Countryman 1990 Trust (collectively, "Cal–Micro")—appealed a ruling of the Bankruptcy Appellate Panel ("BAP") for the Ninth Circuit that reversed a bankruptcy court order granting summary judgment in favor of Cal–Micro and declaring Cantrell's debt nondischargeable. The bankruptcy court's nondischargeability judgment was based on § 523(a)(4) of the Bankruptcy Code, which excepts from discharge debts arising from fraud or defalcation while acting in a fiduciary capacity. In reversing the bankruptcy court's grant of summary judgment, the BAP concluded that the court had—for several reasons—improperly accorded collateral estoppel effect to a prepetition default judgment rendered against Cantrell by a California state court. The state court had granted Cal–Micro's motion for default judgment on the claims asserted in its complaint against Cantrell, which included, among other causes of action, a claim that Cantrell had breached the fiduciary duties he owed to Cal–Micro as its corporate officer. The claims asserted against Cantrell in the state court case all stemmed from Cal–Micro's allegation that he had "expropriated corporate funds and

assets of Cal–Micro for his own personal use and failed to use Cal–Micro's assets for the payment of the corporation's business and operational expenses." *Cantrell,* 329 F.3d at 1122. The California state court's default judgment awarded Cal–Micro compensatory damages, as well as punitive damages, attorney fees and costs, but did not specify the causes of action on which it was granted. *Id.* Shortly after the state court denied his motion to set aside the default judgment, Cantrell filed for bankruptcy protection, and Cal–Micro commenced its nondischargeability proceeding against him. *Id.* at 1122–23.

The Ninth Circuit ultimately affirmed the BAP's ruling, finding that the bankruptcy court had improperly granted summary judgment in favor of Cal–Micro and holding that, "under California law[,] a corporate officer is not a fiduciary within the meaning of § 523(a)(4)...." *Id.* at 1128. Before reaching its decision on that point of law, however, the *Cantrell* court first rejected the BAP's conclusion that the bankruptcy court had misapplied preclusion principles in granting Cal–Micro summary judgment on its § 523(a)(4) claim. *Id.* at 1123–24. In analyzing whether the bankruptcy court had properly applied the doctrine of issue preclusion, the Ninth Circuit began by noting that "a decision has a preclusive effect in later proceedings only where the [state court] record shows an express finding upon the allegation for which preclusion is sought." *Id.* at 1124 (internal quotation marks omitted). The Court of Appeals recognized, however, that "the express finding requirement can be waived if the court in the prior proceeding necessarily decided the issue. In such circumstances, an express finding is not required because if an issue was necessarily

decided in a prior proceeding, it was actually litigated." *Id.* (internal quotation marks and citations omitted).

Pointing out that under California law "a plaintiff [is entitled to] recover punitive damages '[i]n an action for the breach of an obligation not arising from contract' upon a finding of 'oppression, fraud, or malice,'" *id.* at 1125 (quoting Cal. Civ. Code § 3294(a)), the Ninth Circuit found that, because punitive damages were awarded by way of the state court judgment, the court necessarily determined that Cantrell had committed fraud. *Id.* at 1125 ("[T]he state court seemingly decided that Cantrell acted in a fraudulent manner while serving as a corporate officer ... and breached the fiduciary duties that he owed to the corporation."). Concluding that the bankruptcy court had properly applied the doctrine of issue preclusion, the *Cantrell* court reasoned: "we are convinced that the [state] court's award of punitive damages could only have been based on the claims that Cantrell fraudulently withdrew and used Cal–Micros's corporate assets for his own personal benefit." *Id.* The Ninth Circuit accordingly determined that "the state court entered a valid and final judgment that Cantrell engaged in fraudulent conduct in his capacity as an officer of Cal–Micro, and collateral estoppel bars him from re-litigating this issue in bankruptcy." *Id.*

*Cantrell* thus supports Miller's argument that the jury's award of punitive damages and attorney fees[8] necessarily establishes that the State Court made a finding of fraud against Grimsley—a finding that bars him from relitigating the issue in this adversary proceeding. *See also Adair,* 2009 WL 765052, at *1, 2009 Bankr.LEXIS 691, at *1 (recognizing that,

---

**8.** To be clear, under the Jury Instructions, a finding of aggravated or egregious fraud was a prerequisite to an award of punitive damages and, in turn, an award of punitive damages was required for an award of attorney fees.

if default judgment had not been reversed, the bankruptcy court could have applied the doctrine of issue preclusion and inferred a finding of fraud based on punitive damage award where "[t]he state court made no specific finding of fraud . . . [because] such a finding would have been implicitly necessary to support the punitive damages"); *Z–Tex, Inc. v. Goldfarb (In re Goldfarb)*, No. 06–01275, 2006 WL 3513624, at *4, 2006 Bankr.LEXIS 3364, at *12 (Bankr.S.D.N.Y. Dec. 5, 2006) (granting summary judgment against the debtor on creditors' nondischargeability claim based on application of preclusion principles because New York law requiring a finding of fraud as a predicate to imposition of punitive damages in a breach-of-contract case necessarily meant that the "[state court's] assessment of punitive damages [constituted] [a] determin[ation] that the Debtor acted with actual fraud in his breach of contract with the Judgment Creditors").

Grimsley does not attempt to distinguish *Cantrell, Adair* or *Goldfarb*. Nor does he claim that the courts in those cases improperly applied the doctrine of issue preclusion. Rather, Grimsley simply repeats the refrain that "a [c]ourt only speaks through its entries," cites a handful of cases applying this principle and, based on this proposition, argues that the Court may not rely on issue preclusion to infer a finding of fraud by the jury in the State Court. Response at 4. The Court disagrees.

The principle that a court speaks only through its judgment entries and orders is hornbook law[9] and correct as far as it goes, but it does not go far enough to carry the day for Grimsley. Properly understood, the principle requires a court to set forth its ruling in a written entry or order (either directly or indirectly through incorporation by reference) if the ruling is to have legal effect. *See State v. Williams*, No. 81949, 2003 WL 21710766, at *2 (Ohio Ct.App. July 24, 2003) ("[S]ince the court speaks only through its journal and not by oral pronouncement, any misnomer by the court [in its oral statement] had no legal effect whatsoever." (citation omitted)); *Marion v. Brandes*, No. 99AP–1153, 2000 WL 1050983, at *14 (Ohio Ct. App. Aug. 1, 2000) ("Although the court announced its decision . . . at the pretrial conference . . . that announcement had no legal effect until it was reduced to judgment entry and filed with the clerk of courts."). The principle recognizes that "[i]t is not inconceivable that the judge . . . might change his mind between the time of announcing a decision and the filing of a judgment entry." *Atkinson v. Grumman Ohio Corp.*, 37 Ohio St.3d 80, 523 N.E.2d 851, 854 (1988).

Quite simply, the principle does not reach as far as Grimsley appears to believe it does. Indeed, the very opinions on which Grimsley relies aptly demonstrate the limitations of the principle's reach. For example, it is an abuse of discretion for a court that has decided to retain jurisdiction over spousal-support issues to fail to include a retention-of-jurisdiction provision either in the divorce decree or in a separation agreement incorporated into the decree. *See Janssen v. Janssen*, 186 Ohio App.3d 488, 928 N.E.2d 1156, 1158 (2010). Other applications of the principle illustrated by the cases on which Grimsley relies are as follows: (1) a criminal sentence is void if the trial court makes a mistake regarding the sentence in its journal entry, *see State v. Bedford*, 184 Ohio App.3d 588, 921 N.E.2d 1085, 1088 (2009); (2) a court of appeals does not have jurisdiction over an appeal if the notice of

---

**9.** *See, e.g.,* 23 Ohio Jur.3d *Courts & Judges* § 335 (2011); 21 C.J.S. *Courts* § 254 (2011).

appeal was filed before the trial court entered its order and the notice of appeal is never amended to make the order part of the record on appeal, *see Desai v. Franklin,* 177 Ohio App.3d 679, 895 N.E.2d 875, 894 (2008); (3) a judge may continue to participate in a case even "after disqualifying himself on the record" if the judge "never formally disqualified himself from the proceedings by journal entry," *see State v. Hartman,* 174 Ohio App.3d 244, 881 N.E.2d 891, 895 (2007); and (4) a case is not properly dismissed if the lower court merely orally announces, but fails to journalize, its intention to dismiss the case. *See Yeager v. Schulze, Phillips & Chase,* 173 Ohio App.3d 466, 878 N.E.2d 1100, 1104 (2007).

■ The Court has no reason to question these decisions; their holdings appear to be consistent with the principle that a court's ruling must be set forth in a written entry or order if the ruling is to have legal effect. The Court would be required to follow the principle—if it applied here—under the Ohio case law set forth above and, if the Judgment had been issued by a federal court, under federal law. *See, e.g., Bell v. Thompson,* 545 U.S. 794, 805, 125 S.Ct. 2825, 162 L.Ed.2d 693 (2005) (" 'Basic to the operation of the judicial system is the principle that a court speaks through its judgments and orders.' ") (quoting *Murdaugh Volkswagen, Inc. v. First Nat'l Bank of South Carolina,* 741 F.2d 41, 44 (4th Cir.1984)); *United States v. Coccia,* 598 F.3d 293, 296 (6th Cir.2010) ("A court speaks through its written orders and judgments...."). But there is nothing in the principle that prohibits a court from reviewing the entire record of a case—which here includes the Instructions, the Special Interrogatories and the jury verdict—when deciding the grounds for, or the meaning of, a court's judgment or order. To the contrary, a court clearly may

do so. *See Joyce v. Gen. Motors Corp.,* 49 Ohio St.3d 93, 551 N.E.2d 172, 172 (syllabus ¶ 1) (Ohio 1990) ("Where, in the interest of justice, it is essential for a reviewing court to ascertain the grounds upon which a judgment of a lower court is founded, the reviewing court must examine the entire journal entry and the proceedings."); *Lurz v. Lurz,* No. 93175, 2010 WL 877522, at *3 (2010) ("A trial court speaks through its journal entries.... The appellate court should examine the entire record to discern the meaning of the judgment entry when the judgment is unclear or ambiguous." (citations omitted)); *State v. Sumpter,* No. 5–79–14, 1979 WL 207947, at *2 (1979) ("[A] court speaks only through its journal. Such is, of course, the case and the case here. But here, the journal entry alone is insufficient to establish the meaning of certain terms used in that entry. There was an arraignment, a plea, a sentence and a suspension, but the character of the offense was not incorporated in the entry and required the documentation included in the other exhibits. The court spoke, but spoke within a context of events which required revelation to make the words of the court fully meaningful in the right of the proof required in the present case." (internal quotation marks omitted)). And that is what the Court has done here—determine, by a review of the record, the grounds for the Judgment, as well as its legal effect in the context of nondischargeability.

In most instances, it will be the trial court that issued the ruling, or a court hearing an appeal of the trial court's ruling, that reviews the record to determine the grounds for, or the meaning of, the ruling. But here it is this Court, not the state court that issued the Judgment, that has the jurisdiction to determine the legal effect of the Judgment in the nondischargeability context. At issue here is whether a bankruptcy court adjudicating a

§ 523(a)(2) dischargeability claim may—*in the absence of an express finding of fraud by a state court*—infer that the state court found fraud by virtue of its imposition of punitive damages against the debtor in the nonbankruptcy litigation. The exclusive jurisdiction to make fraud-based dischargeability determinations rests with the bankruptcy courts. *See* 11 U.S.C. § 523(a)(2) and (c)(1). It stands to reason, then, that only bankruptcy courts (or the district courts if the reference is withdrawn) have jurisdiction to address questions concerning the proper application of preclusion principles in a § 523(a)(2) action. Because state courts would be prohibited by federal law from making fraud-based dischargeability determinations and state court decisions therefore necessarily arise in an entirely different legal context than the one present here, Grimsley's reliance on decisions issued by state courts is misplaced. By contrast, *Goldfarb* is on all fours with this adversary proceeding in that the bankruptcy court in that case applied the doctrine of issue preclusion in granting summary judgment against the debtor on a nondischargeability claim where the state court, while not expressly finding fraud, had awarded punitive damages and could have done so only if the state court had in fact found fraud. Although the bankruptcy court in *Goldfarb* did not address the principle on which Grimsley now relies (apparently because the parties did not raise it), the principle would have applied in that case—it is, after all, a black-letter legal principle equally applicable under both federal and state law. Yet the bankruptcy court in *Goldfarb* applied issue preclusion nonetheless. The result must be the same here.

■ Thus, the Ohio state court decisions cited by Grimsley in support of the general proposition that a court speaks only through its entries and orders do not call into question the conclusion reached by the courts in *Cantrell, Adair* and *Goldfarb:* A bankruptcy court applying the doctrine of issue preclusion in a dischargeability proceeding may—in the absence of a specific finding by the state court—properly infer fraud or other malicious and willful conduct from the state court's imposition of punitive damages. And, as explained below, the Court's independent research has uncovered several other reported decisions that—like *Cantrell, Adair* and *Goldfarb*—also support this conclusion.

In *Scott v. Hall (In re Hall),* 98 B.R. 777 (Bankr.S.D.Ohio 1989), for example, the plaintiff was awarded compensatory and punitive damages in state court for the defendant's conversion of funds. In the defendant's bankruptcy case, the plaintiff, relying on the doctrine of issue preclusion, argued that the defendant could not relitigate whether the debt arising from his conversion was a "debt . . . for willful and malicious injury . . . to another entity or to the property of another entity" within the meaning of 11 U.S.C. § 523(a)(6). Addressing whether the character of the debtor's conduct—i.e., the issue of willfulness and maliciousness—had actually been litigated in and necessary to the outcome of the state court case, the bankruptcy court stated:

> The state court jury verdict simply finds in favor of the plaintiff and against the defendant/debtor, and awards both compensatory and punitive damages to the plaintiff
>
> . . . .
>
> By returning a verdict with actual damages, it is clear that the jury decided that the defendant/debtor had committed a wrongful act of conversion, which harmed the plaintiff, and that such act was without justification or excuse. On the basis of the jury instructions it may

be questioned whether the jury's verdict for actual damages necessitated a determination that the debtor's actions were intentional. Resolution of that question is unnecessary, however, because of the jury's further actions with regard to punitive damages. The jury was instructed that it could award punitive damages

> only where a party intentionally and with actual malice injures another or acts without lawful justification or excuse.

Therefore, to reach its verdict on actual and punitive damages, the jury, of necessity, concluded that the debtor's acts were wrongful, intentional, produced harm and were without just cause or excuse.

... With respect to the third element of collateral estoppel ... it appears clear that the issues decided by the state court jury were necessary to enable the jury to award compensatory and punitive damages....

*Hall,* 98 B.R. at 782 (footnotes and citations omitted). *See also Morris v. Cunningham (In re Cunningham),* 355 B.R. 913, 918 (Bankr.N.D.Ga.2006) ("The facts of this case meet the requirement that the issue was actually and necessarily litigated.... Based on the evidence presented, the jury determined that plaintiff was entitled to both compensatory and punitive damages due to defendant's conduct.... The determination of fraud was essential to the judgment entered by the Superior Court, as the verdict and judgment include an award against the defendant for punitive damages.... A fraud finding was essential to an award of punitive damages, as plaintiff sought punitive damages exclusively in connection with her fraud claim." (citation omitted)). *Cf. Schinazi v. Tamman,* No. 09 Civ. 2400, 2009 WL 5088767, at *3–4 (S.D.N.Y. Dec. 9, 2009) ("The jury's findings that a contract existed and

that Schinazi breached it were unrelated to any determination under § 523 concerning deception or fraud. The district judge's charge to the jury contained no instruction on deceit.... Yet the Bankruptcy Judge concluded [that] an inference regarding Schinazi's intent could be drawn from the jury's answers on the Special Verdict Form in conjunction with this instruction. Such impressionistic characterizations of the jury verdict are not substitutes for compliance with the specific conditions required to invoke collateral estoppel...." (internal quotation marks omitted)); *KYMN v. Langeslag (In re Langeslag),* 366 B.R. 51, 59 (Bankr.D.Minn.2007) ("When applying collateral estoppel to a jury verdict, the task is to glean the specific findings on which the jury based its verdict. Where the special interrogatories submitted to the jury were not broken down to specific elements of the claims or defenses in suit, one must determine whether, as a matter of logic, there was only one set of possible findings on those elements that could support the verdict actually rendered. This requires a close inspection of the trial judge's instructions to the jury. If, in framing up the governing law, the instructions permitted an adjudication of liability on one and only one set of specific, predicate fact-findings, the only inference is that the jury found those facts."); *Hood v. Bennitt (In re Bennitt),* 348 B.R. 820 (Bankr.N.D.Ala.2006) ("The jury's verdict in this matter does not identify what issues the jury actually and necessarily decided in arriving at its verdict. The verdict simply rendered a general verdict against the defendant.... [T]he verdict does not specify which of the plaintiff's two causes of action formed the basis of the jury's decision. *If the jury had indicated, in its verdict, that any portion of the damages awarded were punitive, rather than compensatory, it could be inferred that its verdict was based on the plaintiff's*

*fraud count. That inference would be supported by the legal reality that the jury must have concluded that the defendant was guilty of intentional fraud since, under Alabama law, punitive damages cannot be awarded for breach of contract, and may only be awarded for intentional fraud.*" (emphasis added)).

In sum, case law clearly establishes the principle that a bankruptcy court in a dischargeability case may infer a finding of fraud by a nonbankruptcy court when punitive damages are awarded against the debtor. And this principle is not undermined by the wholly inapposite authorities Grimsley cites in support of the proposition of law that a court speaks only through its orders and judgment entries— a general rule that is not germane to the Court's preclusion analysis here. The Court accordingly concludes, based on its careful review of the Instructions, Verdict Form, Judgment, Special Interrogatories and JNOV Order, that: (1) the issue of fraud was actually litigated in the State Court Case; and (2) the jury's punitive damages/attorney fee award in the State Court Case demonstrates that it necessarily made a finding that Grimsley was guilty of fraud. Based on that finding, the doctrine of issue preclusion bars relitigation of the issue of fraud in this adversary proceeding.

Finally, the fact that this Court in *Rapp* found that a state court judgment was not entitled to issue—preclusive effect in a dischargeability action does not—as Grimsley contends—support the same conclusion here. In *Rapp*, the state court had determined "that there was both a breach of contract and serious and knowing violations of the Consumer Sales Practices Act," but expressly stated that "the Court does not find common law fraud . . . ." *Rapp*, 375 B.R. at 427. And, in *Rapp*, although the state court imposed treble damages pursuant to the Ohio Consumer Sales Practices Act, it did not make an award of punitive damages under Ohio common law. Thus, *Rapp* is readily distinguishable from the present case. As Miller correctly points out, "unlike [*Rapp*], the Judgment does not contain an explicit finding that Grimsley *did not commit fraud.* Rather the Judgment awarded Plaintiff punitive damages and attorneys' fees, which, based upon the Instructions, means that the jury necessarily found that Grimsley committed aggravated or egregious fraud despite not clearly stating its finding in the [Special] Interrogatories." Reply at 4–5 (emphasis added).

Having determined that the issue of fraud was actually litigated and that a finding of fraud was a necessary predicate for the State Court's Judgment award of punitive damages and attorney fees, the Court next explains why this determination leads to the inescapable conclusion that the Debt is nondischargeable under § 523(a)(2)(A).

## C. Miller's § 523(a)(2)(A) Claim

■■■■■ Section 523(a)(2)(A) of the Bankruptcy Code provides, in pertinent part, as follows:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

. . . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

11 U.S.C. § 523(a)(2)(A). "Section 523(a)(2)(A) of the Bankruptcy Code implements the longstanding bankruptcy pol-

icy that only those debts which are honestly incurred are entitled to the benefits of a bankruptcy discharge." *Mack v. Mills (In re Mills)*, 345 B.R. 598, 603 (Bankr. N.D.Ohio 2006). "Congress concluded that preventing fraud is more important than letting defrauders start over with a clean slate...." *Mayer v. Spanel Int'l Ltd. (In re Mayer)*, 51 F.3d 670, 674 (7th Cir. 1995). In order to promote the fresh start policy of the Bankruptcy Code, "exceptions to discharge are to be strictly construed against the creditor." *Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir.1998). *See also Ker v. Ker (In re Ker)*, 365 B.R. 807, 812 (Bankr.S.D.Ohio 2007) ("In order to afford the honest but unfortunate debtor a fresh start, the Court narrowly construes exceptions to discharge."). " 'If there is room for an inference of honest intent, the question of nondischargeability must be resolved in favor of the debtor.' " *Jones v. Lawson (In re Lawson)*, No. 05–3246, 2007 WL 1192453, at *6 (Bankr. N.D.Ohio Apr. 23, 2007) (quoting *ITT Fin'l Servs. v. Szczepanski (In re Szczepanski)*, 139 B.R. 842, 844 (Bankr.N.D.Ohio 1991)).

In *Rembert*, a case in which the creditor sought to except its debt from discharge based on alleged intentional misrepresentations by the debtor, the Sixth Circuit stated:

> In order to except a debt from discharge under § 523(a)(2)(A), a creditor must prove the following elements: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) [the creditor's] reliance was the proximate cause of loss.

*Rembert*, 141 F.3d at 280–81 (footnote omitted). "The objecting creditor bears the burden of proof to establish that the debt is of a type excepted from discharge...." *Hart v. Molino (In re Molino)*, 225 B.R. 904, 907 (6th Cir. BAP 1998). *See Nat'l City Bank v. Manning (In re Manning)*, 280 B.R. 171, 178–79 (Bankr. S.D.Ohio 2002) ("A creditor has the burden of proving by a preponderance of the evidence that a debt is nondischargeable under § 523(a)(2)(A)." (citing *Grogan*, 498 U.S. at 291, 111 S.Ct. 654)).

"[T]he elements of common law fraud in Ohio are substantially equivalent to those required to establish a nondischargeable debt based on false representation under § 523(a)(2)(A)." *Rapp*, 375 B.R. at 430. *See Francis*, 226 B.R. at 389 (concluding that the elements of a § 523(a)(2)(A) claim and a claim for common law fraud are "virtually identical"); *Foster*, 280 B.R. at 205 (same); *Sullivan v. Hallagan (In re Hallagan)*, 241 B.R. 544, 546 (Bankr. N.D.Ohio 1999) ("[C]onduct which would render a debt nondischargeable under § 523(a)(2)(A) is equivalent to common law fraud....").[10] Thus, "a state court's determination that a debtor committed com-

---

10. The Ohio Supreme Court has listed the following six elements of a claim for common law fraud:

 (a) a representation or, where there is a duty to disclose, concealment of a fact;

 (b) which is material to the transaction at hand;

 (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred;

 (d) with the intent of misleading another into relying upon it;

 (e) justifiable reliance upon the representation or concealment; and

 (f) a resulting injury proximately caused by the reliance.

*Burr v. Board of County Comm'rs*, 23 Ohio St.3d 69, 491 N.E.2d 1101, 1102 (syllabus ¶ 2) (Ohio 1986).

mon law fraud would necessarily satisfy the elements set forth in *Rembert.*" *Rapp*, 375 B.R. at 430.

The Verdict Form, and the jury's answers to the Special Interrogatories, when read together with the Instructions, clearly show that the Debt established by the Judgment is for money and services.[11] And, for the reasons discussed above, the Court may infer that the jury found that the Debt arose from fraudulent conduct on Grimsley's part. These findings by the State Court—both stated and inferred—establish the factual predicate for a grant of summary judgment on Miller's § 523(a)(2)(A) claim.

 Nor is there any question that the full amount of the Debt is nondischargeable. Under § 523(a)(2)(A), the amount of "money, property, etc., that is *obtained by fraud* gives rise to a nondischargeable debt." *Cohen v. de la Cruz*, 523 U.S. 213, 218, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998) (emphasis added). "The language 'ob-

tained by' clearly indicates that the fraudulent conduct occurred at the inception of the debt, i.e., the debtor committed a fraudulent act to induce the creditor to part with its money, property or services." *Valley Mem'l Homes v. Hrabik (In re Hrabik)*, 330 B.R. 765, 772 (Bankr.D.N.D. 2005). That was the case here. In the Instructions, the State Court instructed the jury that "[t]he fraud must occur at the time the parties entered into the agreement." *See* Instructions ¶ 307.01. In order to have awarded punitive damages the jury must have found fraud, and in order to have found fraud the jury, applying the Instructions, would have had to find that the fraud occurred at the time that Miller and Grimsley entered into their agreement. The Court, therefore, concludes that the actual damages awarded by the jury was for money or property that Grimsley obtained by fraud and that those damages, therefore, are nondischargeable pursuant to § 523(a)(2)(A). In addition to any amount actually obtained by fraud,

---

**11.** The jury in the State Court Case received the following Instructions:

 **253.01 Plaintiff's Claim (Breach of Contract)**

 1. PLAINTIFF'S CLAIM. The plaintiff claims that he and the defendant entered into an oral agreement to form a partnership that would sell and install roofing contracts in the State of Florida and that the profits would be split equally between them. Plaintiff further claims that defendant breached the contract by failing to pay him his share of the profits, causing him damages. For his part, defendant claims that part of the agreement was for each party to alternate working in Florida for two week periods, and plaintiff failed to perform his obligations.

 2. PROOF OF CLAIM. Before you can find for the plaintiff, you must find by the greater weight of the evidence that

 (A) the parties entered into a contract, and

 (B) the defendant breached the contract by not paying plaintiff ½ of the profits; and

 (C) the plaintiff had substantially performed his duties due under the contract[.]

 **253.29 Expectation damages [Rev. 9-8-2007]**

 1. GENERAL. If you find by the greater weight of the evidence that the defendant breached the contract, and the breach was not excused because plaintiff substantially performed his obligations under the contract, the plaintiff is entitled to damages in the amount sufficient to place him in the same position in which he would have been if the contract had been fully performed by the defendant to the extent that the damages are reasonably certain and reasonably foreseeable.

 By awarding judgment to Miller on his breach-of-contract claim, the jury clearly found that Grimsley did not honor his contractual obligation to pay Miller one-half of the net profits generated by IPI. The Judgment thus establishes that the Debt is for money or services due Miller.

also nondischargeable is the "full liability traceable to that sum[,]" including any liability for items such as treble and other punitive damages, attorney's fees and costs. *Cohen,* 523 U.S. at 219, 118 S.Ct. 1212. In other words, "[o]nce it is established that specific money or property has been obtained by fraud . . . 'any debt' arising there from is excepted from discharge." *Id.* at 218–19, 118 S.Ct. 1212. The Court accordingly concludes that the full amount of the Judgment—including sums awarded Miller for punitive damages, prejudgment interest, attorney's fees and other costs—is nondischargeable.

### VII. Conclusion

For these reasons, the Court concludes that Miller is entitled to judgment as a matter of law on his § 523(a)(2)(A) claim. The Court shall enter a separate judgment providing that the Debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

**IT IS SO ORDERED.**